Opinion
 

 BARON, J.
 

 This case derives from the actions of a title insurance company which issued a policy insuring title to a property without excepting an Internal Revenue Service lien despite its knowledge of the lien’s existence. The insurance company now seeks to recover the amount eventually paid to the IRS on behalf of its policyholder from the trustee who, lacking knowledge of the existence of the lien, conducted a foreclosure sale years earlier without notifying the IRS. The policyholder joins in the suit against the trustee. The central issue raised is whether the trustee is “required” to notify the IRS under the terms of a federal statute. The trial court concluded there was no such requirement, and granted summary judgment to the trustee. We affirm.
 

 Factual and Procedural Background
 

 The essential facts leading up to this dispute are uncontested. In 1984, real property located at 777 North Workman Street, San Fernando, California,
 
 *291
 
 was encumbered by a deed of trust in favor of Beneficial Mortgage Company of California. Defendant and respondent Peelle Financial Corporation (Peelle) was the trustee. In 1991, the IRS recorded a notice of federal tax lien against the property to secure payment of $146,223.09 purportedly owed by Clark and Eleanor Spendlove, then the owners of the property.
 

 In June of 1992, Peelle conducted a nonjudicial foreclosure sale and conveyed the property to Diversified Properties. The trustee’s deed granted the property to Diversified “without covenant or warranty of any kind, express or implied, regarding title to said property or any encumbrances thereon . . . .” The trustee’s deed contained a provision which stated: “After complying with all the requirements of law regarding the mailing of copies of the Notice of Default or the publication or delivery of same, the mailing, posting and publication of copies of the Notice of Trustee’s Sale, and the recording of the Notice of Default and the Notice of Sale, the trustee sold the following described property at a public auction on 06/23/92 at 10:30 a.m. to the highest bidder.” Prior to conducting the sale, Peelle did not send notice to the IRS. Peelle did not have actual knowledge of the IRS lien because the “trustee’s sale guarantee” (similar to a title insurance policy) issued to Peelle contained no reference to it. Peelle had specifically requested to be immediately notified if any federal tax liens were located.
 

 Diversified obtained a lender’s title insurance policy from Lincoln Title Company, which included reference to the IRS lien, and excepted it from coverage.
 

 In March of 1993, Diversified conveyed the property to plaintiff and appellant Elmer J. Diediker, Jr., for $225,000. Southland Title Company, as agent for plaintiff and appellant Transamerica Title Insurance Company (Transamerica), caused to be issued a title insurance policy on behalf of Diediker. Transamerica, through its agent Southland, had knowledge of the IRS lien at the time the policy was issued and had obtained and reviewed the Lincoln Title policy. Transamerica did not show the lien as an exception on the preliminary title report or in the policy.
 

 In August of 1994, the IRS attempted to seize the property in connection with the tax lien, which had grown to over $200,000. Transamerica paid the lien in compliance with the title insurance policy issued to Diediker.
 

 Diediker and Transamerica brought suit against Peelle for negligent misrepresentation and negligence. Transamerica did not claim to be subrogated to any right of Peelle’s, but brought suit on its own behalf. The complaint alleged that the statement in the trustee’s deed that the trustee had complied
 
 *292
 
 . . with all the requirements of law regarding the mailing of copies of the Notice of Default or the publication or delivery of the same, the making, posting and publication of copies of Notice of Trustee’s Sale” was false and negligently made. The complaint also alleged that Peelle breached a duty owed to appellants to locate any existing IRS liens and notify the IRS of the nonjudicial foreclosure prior to the sale of the property. Appellants moved for summary judgment, which was denied. However, since appellants had no further facts or argument to present at trial, and were agreeable to waiving notice, the court construed Peelle’s opposition as a defense motion for summary judgment, and granted the motion as construed. This appeal followed.
 

 Discussion
 

 I
 

 Section 2924b, subdivision (c)(2) of the Civil Code provides a list of persons to whom the trustee under a deed of trust must give notice of default and foreclosure sale, including: “(A) The successor in interest, as of the recording date of the notice of default, of the estate or interest or any portion thereof of the trustor or mortgagor of the deed of trust or mortgage being foreclosed, [fj (B) The beneficiary or mortgagee of any deed of trust or mortgage recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or a recorded statement of subordination to the deed of trust or mortgage being foreclosed. [‘HI (C) The assignee of any interest of the beneficiary or mortgagee described in subparagraph (B), as of the recording date of the notice of default.
 

 (D) The vendee of any contract of sale, or the lessee of any lease, of the estate or interest being foreclosed which is recorded subsequent to the deed of trust or mortgage being foreclosed, or recorded prior to or concurrently with the deed of trust or mortgage being foreclosed but subject to a recorded agreement or statement of subordination to the deed of trust or mortgage being foreclosed. [IQ (E) The successor in interest to the vendee or lessee described in subparagraph (D), as of the recording date of the notice of default. [*][] (F) The Office of the Controller, Sacramento, California, where, as of the recording date of the notice of default, a ‘Notice of Lien for Postponed Property Taxes’ has been recorded against the real property to which the notice of default applies.” In addition, subdivisions (a) and (b) of section 2924b provide a method by which other interested parties can become entitled to notice of default and notice of sale by recordation of a formal request.
 

 Under Civil Code section 2924, “. . . A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law
 
 *293
 
 regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.”
 

 Appellants concede that the IRS is not one of the parties to whom notice of default and sale is required to be sent by California law. Instead, appellants point to the provisions of section 7425 of title 26 of the United States Code (hereafter section 7425). Subsection (b)(1) of section 7425 provides that when a property on which the United States has or claims a lien or title under the IRS code is transferred pursuant to a nonjudicial sale, the sale is “made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and
 
 the United States is not given notice of such sale in the manner prescribed in subsection (c)(1). . .
 
 .” (Italics added.) Under subsection (c)(1), notice of sale is to be given to the Secretary of the Treasury in accordance with regulations prescribed by the secretary, “in writing, by registered or certified mail or by personal service, not less than 25 days prior to the sale.”
 

 We see no mandatory language in the federal statute on which appellants rely. As the trial court stated at the hearing on the summary judgment motion: “[The statute] doesn’t require [the trustee] give [notice]. It says if he doesn’t give it, then the lien still exists. [<][]... [The IRS’s interest is] fully protected by the way [Congress has] set up the law. HQ They either get notice, or if they don’t get notice, they still have the lien. ... I doubt if [Congress is] in any way trying to tell anybody anything beyond that.”
 

 The trial court’s understanding of Congress’s intent is confirmed by the report of the Senate Committee on Finance, which described the problem of IRS tax liens being extinguished without notice, which led to the decision to enact the statute: “. . . Where State law so provides, a junior Federal tax lien may be extinguished without the United States either being made a party to the proceeding or having any actual notice. As a result, under current law tax liens are sometimes extinguished without the United States having actual notice of the proceedings, under circumstances where it is not possible for the Internal Revenue Service to take steps to protect the United States in the collection of its tax revenues.” (Sen.Rep. No. 89-1708, 2d Sess., p. 27 (1966).) The purpose of section 7425(b), as explained by the committee, is to prevent the IRS’s rights from being extinguished without notice: “The bill provides that, in the case of all other foreclosure proceedings [other than
 
 *294
 
 plenary judicial proceedings which are the subject of section 7425(b)], where timely notice of the proceedings is given to the Government, the Government’s claim to property under a tax lien is to be discharged in the manner provided by local law. []Q Where foreclosures covered by this provision are made without proper notice to the Government, the bill provides that this does not affect the Government’s claim under a tax lien (as where the Government is not joined in a judicial foreclosure). In these cases, the Government’s claim continues against the property into the hands of a third party. On the other hand, where notice of the Government’s claim under a tax lien is not filed (even in those cases where filing is not required), or where the Government is notified of the proceeding, a sale has the same effect on the claim as local law provides with respect to similar claims. (This is the same result as where the Government is not joined as a party in a plenary proceeding where its lien is not on file.)” (Sen.Rep. No. 89-1708, 2d Sess.,
 
 supra,
 
 at p. 28.)
 

 The obvious intent of Congress was to put the IRS in a better position than other junior lienholders. Either it would get notice of the foreclosure and an opportunity to intervene in the sale or its junior lien would still exist. The decision to give notice and risk intervention by the IRS or not give notice and risk the IRS coming after the property at a later time is left to the trustee or whoever else might be conducting a nonjudicial sale. The statute does not
 
 require
 
 the trustee to give notice to the United States, but merely provides that the lien will not be extinguished if “the United States is not given notice of such sale.” Since notice is not required, Peelle did not violate a duty owed under law by failing to give it.
 

 Appellants argue in the alternative that the courts should impose a duty on the trustee owed to all future purchasers of property and their title insurers to locate all IRS liens of record and give notice to the IRS prior to conducting a foreclosure sale. Appellants point to the six criteria outlined in
 
 Biakanja
 
 v.
 
 Irving
 
 (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358] which, they contend, support the existence of such duty.
 
 Biakanja
 
 was the landmark case in which our Supreme Court held that a professional who commits negligence in the performance of duties owed to his or her employer can, in some circumstances, be liable for damages suffered by a more remote party, and that: “The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant’s conduct and the injury suffered, [5] the moral blame attached to the defendant’s conduct, and [6] the policy of preventing future harm. [Citations.]” (49 Cal.2d at p. 650.)
 

 
 *295
 
 The difficulty with appellants’ alternative approach is that the Supreme Court has said that the Legislature intended to cover the entire subject area of nonjudicial foreclosures by statute and leave nothing for the courts. In
 
 I. E. Associates
 
 v.
 
 Safeco Title Ins. Co.
 
 (1985) 39 Cal.3d 281 [216 Cal.Rptr. 438, 702 P.2d 596], the issue was whether the trustee had a duty to locate the trustor prior to conducting a foreclosure sale when the only address of which the trustee was aware proved to be incorrect, and the statute required notice to be sent to the “last known address.” (39 Cal.3d at p. 287.) Plaintiff contended “that under agency principles the trustee of a deed of trust has an independent duty to take reasonable steps to provide actual notice to a defaulting trustor.”
 
 (Id.
 
 at p. 285.) This assertion required the court “to determine whether the statutory procedures governing notice of nonjudicial foreclosure are the exclusive source of rights, duties and liabilities.”
 
 (Ibid.,
 
 fn. omitted.)
 

 Initially the court noted that: “The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes. [Citations.] No case holding that a trustee of a deed of trust has any additional common law duties with respect to notice has been cited or found.”
 
 (I. E. Associates
 
 v.
 
 Safeco Title Ins. Co., supra,
 
 39 Cal.3d. at pp. 287-288.) Having concluded that there was “no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes,” the court explained the “persuasive policy reasons which militate against a judicial expansion of those duties”: “. . . The nonjudicial foreclosure statutes—an alternative to judicial foreclosure—reflect a carefully crafted balancing of the interests of beneficiaries, trustors, and trustees. Beneficiaries, of course, want quick and inexpensive recovery of amounts due under promissory notes in default. Trustors, on the other hand, need protection against the forfeiture of valuable property rights. Trustees, the middlemen, need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation. In taking all of these concerns into account, the statutes strike an overall balance favoring the protection of trustors. [Citations.]”
 
 (Id.
 
 at p. 288.)
 

 I. E. Associates
 
 was followed in
 
 Perez
 
 v.
 
 222 Sutter St. Partners
 
 (1990) 222 Cal.App.3d 938 [272 Cal.Rptr. 119], in which the court was faced with the question of whether the trustee was required to give notice to easement holders who had not specifically requested it. Noting that the Legislature had specified which parties were entitled to notice in Civil Code section 2924b, the court held that requiring trustees to give notice to all easement holders of record “would impose untold risks and burdens on trustees, marking a
 
 *296
 
 dramatic departure from the Legislature’s practice of
 
 balancing
 
 the interests involved. [Citation.]” (222 Cal.App.3d at p. 949, original italics.)
 

 Even were we inclined to disregard the Supreme Court’s admonition against the creation of common law duties not found in the statutes governing nonjudicial foreclosures, the present circumstances would not pass muster under
 
 Biakanja's,
 
 six-part test. The transaction between Peelle as trustee and the beneficiary of the trust, Beneficial Mortgage, was not intended to affect appellants, unlike the situation in
 
 Biakanja
 
 where the defendant attorney’s preparation of a will was specifically intended to benefit plaintiff, his client’s legatee. While it may be foreseeable that a trustee’s failure to locate an IRS lien and give notice to the IRS will harm the initial purchaser at the foreclosure sale—usually the beneficiary of the trust—it is not at all foreseeable that subsequent purchasers will be impacted. This is because in the usual course of events, each purchaser of property obtains title insurance of his or her own. The issuer of each policy conducts its own search and will either locate the lien dining its preliminary title search and except it—in which case the purchaser can negotiate a new price which takes the lien into account or cancel the transaction—or it will fail to locate the lien, or for other reasons choose not to except it from coverage, and the purchaser will be protected by the policy. The former is precisely what would have happened here if Transamerica had not made the unfounded presumption that federal law required Peelle to notify the United States and thereby extinguish the IRS lien.
 
 [1]
 
 Appellants’ suggestion that a decision in favor of Peelle will impose new burdens on title insurers to conduct independent investigations is nonsense. The title insurer quite regularly identifies liens which have the appearance of affecting title prior to issuing its preliminary title report and policy. It is the responsibility of the seller to come forward with facts to prove that the lien has been extinguished or risk losing the sale.
 

 Turning to the other
 
 Biakanja
 
 factors, it might be said that appellants suffered injury (although the only truly innocent party here, Diediker, was fully protected by his title insurance policy), but the connection between
 
 Peelle’s
 
 conduct and the injury is not a close one. It was Transamerica’s intervening decision to exclude the lien from the preliminary title report which caused Diediker to buy a piece of property on which a tax lien existed without making any provision in the purchase price for the existence of the lien. There is no moral blame to lay on any party. The policy of preventing
 
 *297
 
 future harm will not be influenced either way. Trustees and the parties who conduct title searches on behalf of the trustees are already highly motivated by their own self-interest to locate and extinguish all IRS liens. Once it is made clear to future purchasers that standard language in a trustee’s deed to the effect that notices “required by law” have been given does not mean notice to the IRS, they can take steps to obtain proof that the tax lien was properly extinguished. In short, we find no reason to create a new, nonstatutory duty for trustees engaged in the conduct of foreclosure sales as requested by appellants.
 

 II
 

 The second issue raised is whether by stating that it had “complied] with all the requirements of law regarding the mailing of copies of the Notice of Default or the publication or delivery of same, the mailing, posting and publication of copies of the Notice of Trustee’s Sale, and the recording of the Notice of Default and the Notice of Sale” prior to selling the subject property, Peelle is guilty of negligent misrepresentation because he did not send notice to the IRS.
 

 “ ‘Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.’ [Citations.]”
 
 (Bily
 
 v.
 
 Arthur Young & Co.
 
 (1992) 3 Cal.4th 370, 407 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835], italics omitted, quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 720, p. 819.) If defendant’s belief “is both honest and reasonable, the misrepresentation is
 
 innocent
 
 and there is no
 
 tort liability.
 
 [Citations.]” (5 Witkin, Summary of Cal. Law,
 
 op. cit. supra,
 
 Torts, § 720, p. 819, original italics.) Justifiable reliance on the part of the plaintiff is also “an essential element of a cause of action for negligent misrepresentation ....’’
 
 (Blankenheim
 
 v.
 
 E. F. Hutton & Co.
 
 (1990) 217 Cal.App.3d 1463, 1473 [266 Cal.Rptr. 593].)
 

 As we have seen, there is no “requirement” under state or federal law that the IRS be notified prior to a foreclosure, so the representation made in the trustee’s deed was not false on its face. Appellants can only transform it into a false statement by adding a clause to the effect that the trustee has sent notice “to the IRS” or all notices “necessary to extinguish junior tax liens,” and disregarding the statement that the trustee conveyed the property “without covenant or warranty of any kind, express or implied, regarding title to said property or any encumbrances thereon . . . .” Parties cannot read something into a neutral statement in order to justify a claim for negligent misrepresentation. The tort requires a “positive assertion[.]”
 
 (Wilson
 
 v.
 
 Century 21 Great Western Realty
 
 (1993) 15 Cal.App.4th 298, 306 [18
 
 *298
 
 Cal.Rptr.2d 779].) “An ‘implied’ assertion or representation is not enough. [Citations.]”
 
 (Ibid.)
 
 accord,
 
 Byrum
 
 v.
 
 Brand
 
 (1990) 219 Cal.App.3d 926, 942 [268 Cal.Rptr. 609]; see
 
 Huber, Hunt & Nichols, Inc.
 
 v.
 
 Moore
 
 (1977) 67 Cal.App.3d 278, 304 [136 Cal.Rptr. 603] [“No case has been cited and we find none in which any court held that the doctrine of negligent misrepresentation applies to implied representations. In all cases a ‘positive assertion’ was involved. [Citations.] (Italics omitted.)”].)
 

 Moreover, even assuming Peelle intended to convey with the standard trustee’s deed language that notice “necessary to extinguish any existing junior tax liens had been given to the IRS,” appellants concede that Peelle had no actual knowledge of the existence of the IRS lien and that it relied on the search conducted by the issuer of the trustee’s sale guarantee to search the record. According to their brief, “Peelle did what most commercial trustees do, it requested that a title company provide to it the names of the parties whose interests in the property are shown by instruments of record which impart constructive notice. Peelle procured a TSG from First Southwestern Title Company [citations]. The IRS tax lien is not shown in the TSG.” We do not see how it could be unreasonable for Peelle to follow a standard industry practice and rely on the results of the First Southwestern Title search, particularly where it specifically requested to be notified of tax liens. If Peelle had intended to convey the message attributed to it by appellants’ interpretation of the deed, its belief in the absence of a tax lien would be both honest and reasonable and preclude liability.
 

 Disposition
 

 The judgment is affirmed.
 

 Vogel (C. S.), P. J., and Hastings, J., concurred.
 

 A petition for a rehearing was denied January 16, 1998, and the opinion was modified to read as printed above.
 

 [1]
 

 In point of fact, the declarations in support of appellants’ motion for summary judgment suggest that it was Southland’s reliance on Peelle’s renown as a “reputable trustee” and the lack of “irregularity of the foreclosure procedure” which persuaded it to disregard the IRS lien rather than any interpretation of the requirements of federal law or statements made in the trustee’s deed.