[No. B189537. Second Dist., Div. Six. Sept. 19, 2007.]

HERITAGE OAKS PARTNERS et al., Plaintiffs and Appellants, v.
FIRST AMERICAN TITLE INSURANCE CO., Defendant and Respondent.

340

## COUNSEL

Alborg, Veiluva & Epstein, Thomas E. Alborg and Michael J. Veiluva for Plaintiffs and Appellants.

Ferguson, Case, Orr, Paterson, Michael W. Case and Douglas E. Kulper for Defendant and Respondent.

## OPINION

**YEGAN, J.**—In this case of first impression, we hold that in a nonjudicial foreclosure sale, a trustee who allegedly is negligent in believing that it is the trustee of record, and who conveys title to a successful bidder, owes no duty to subsequent purchasers of the property.

Heritage Oaks Partners et al. (Heritage Oaks) appeal from the summary judgment granted in favor of First American Title Insurance Co. (First American) in this action for negligence and equitable indemnity. Heritage Oaks bought real property from Union Bank after the bank had acquired title at a foreclosure sale conducted by First American. At the time of the foreclosure sale, a substitution of trustee had been recorded naming Union Bank, not First American, the trustee under the relevant deed of trust. The prior owners sued, alleging the foreclosure sale was void because it had not been conducted by the trustee of record. They prevailed in the trial court. Heritage Oaks, the subsequent purchaser, settled with the prior owners. First American and Union Bank appealed. We reversed that judgment and reformed the deed of trust to validate the foreclosure sale. (*Jones v. First American Title Ins. Co.* (2003) 107 Cal.App.4th 381 [131 Cal.Rptr.2d 859].) Heritage Oaks now seeks to recover its attorney fees and other damages on the theory that First American caused the litigation by negligently conducting the foreclosure sale when it was not the trustee of record. It contends the trial court erred when it sustained without leave to amend First American's demurrer to the cause of action for equitable indemnity and when it granted First American's motion for summary judgment. We affirm.

## Facts

Heritage Oaks bought real property known as the "Peppertree Property" from Union Bank in October 1996. Union Bank acquired the Peppertree Property in January 1996 by making a credit bid of $2,150,000 at a nonjudicial trustee's sale conducted by respondent First American. First American conducted the sale on Union Bank's instructions after Union Bank's borrowers, the "Peppertree Owners," defaulted on a loan secured by a deed of trust on the Peppertree Property. First American was not, however, the trustee under the relevant deed of trust. Union Bank had previously substituted itself as the trustee and did not thereafter record another substitution of trustee to reinstate First American to that position.[1]

## The Peppertree/Jones Lawsuits

By December 1997, the Peppertree Owners had discovered that First American was not the trustee of record when it conducted the foreclosure sale. They filed a lawsuit against Union Bank, First American and Heritage Oaks alleging that the foreclosure sale to Union Bank was void and seeking to quiet title to the property in the Peppertree Owners. Heritage Oaks incurred more than $500,000 in attorney fees and expenses defending itself in the litigation. In September 1999, the trial court entered judgment in favor of the Peppertree Owners, concluding that the foreclosure sale to Union Bank was void. Union Bank and First American appealed. The Peppertree Owners filed a second lawsuit against Heritage Oaks seeking return of the Peppertree Property. Heritage Oaks settled that lawsuit by paying the Peppertree Owners $1.4 million and quitclaiming the Peppertree Property to them, except for two lots which Heritage Oaks had already sold to a third party. Heritage Oaks kept the proceeds of that sale and paid about $123,000 in delinquent taxes on the property.

---

[1] The Peppertree Owners purchased and developed the property using the proceeds of an $8.7 million loan from Union Bank's predecessor in interest, which was secured by a deed of trust on the Peppertree Property. They defaulted on the loan and Union Bank began foreclosure proceedings. In an attempt to prevent foreclosure and at the request of the Peppertree Owners, Union Bank agreed to release a portion of the property from the deed of trust, so it could be sold to pay down the loan. To facilitate the sale, Union Bank recorded a substitution of trustee and partial deed of reconveyance substituting itself as trustee in place of First American. (*Jones v. First American Title Ins. Co., supra,* 107 Cal.App.4th at pp. 384–385.) The document mistakenly applied to the entire property, even though Union Bank had apparently intended to limit the substitution of trustee and reconveyance to the single parcel that was for sale. Union Bank did not thereafter record another substitution of trustee to reinstate First American as trustee. (*Id.* at pp. 386–387.) In January 1996, after the Peppertree Owners again defaulted, Union Bank instructed First American to conduct the foreclosure sale. First American did. Union Bank acquired the property at the sale for a credit bid. In October 1996, it sold the property to Heritage Oaks. (*Id.* at p. 386.)

In March 2003, after the settlement was final, this court reversed the judgment and held that the trial court erred when it denied reformation of the deed of trust to permit First American to conduct the foreclosure sale. (*Jones v. First American Title Ins. Co., supra*, 107 Cal.App.4th at p. 388.) We reasoned that the substitution of Union Bank as trustee in place of First American occurred in the context of a whole series of agreements intended by the parties to help the borrowers repay the loan and to preserve Union Bank's "right to foreclose if the borrowers did not perform." (*Id.* at p. 389.) Even though one of the necessary documents in that series was deficient, the parties always intended to preserve Union Bank's right to foreclose. Thus, we held "reformation is necessary to carry out the manifest intent of the parties. Mutual mistake is satisfied by the undisputed evidence that at the time of foreclosure all parties believed that the documents were sufficient to carry out the intent of the parties." (*Ibid.*) Reformation of the deed of trust to validate the January 1996 foreclosure sale was, we concluded, "the only reasonable disposition." (*Id.* at p. 390.)

## *The Present Litigation*

Heritage Oaks alleges two causes of action against First American in its complaint. First, its cause of action for equitable indemnity alleges that First American breached its legal duties as trustee under the deed of trust by conducting the foreclosure sale without first recording a "proper substitution of trustee." This mistake created the *Peppertree/Jones* litigation and caused Heritage Oaks to incur attorney fees and suffer other damages for which it is entitled to be indemnified. Second, Heritage Oaks alleges that First American was negligent in conducting "a foreclosure sale based upon an incomplete and mistaken substitution" of trustee, and in conducting a foreclosure sale "that required legal reformation to be valid . . . ." Heritage Oaks alleges its damages were foreseeable to First American as "a title company and putative trustee under a deed of trust . . . ."

The trial court sustained First American's demurrer to the cause of action for equitable indemnity without leave to amend. It concluded that First American and Union Bank did not cause any injury to the Peppertree Owners—the plaintiffs in the *Jones* litigation. As a result, there was no "fault" to apportion among the defendants in that action and no basis for indemnification of one defendant by the others.

Thereafter, the trial court granted First American's motion for summary judgment on the sole remaining claim for negligence. It found that First

American had no duty to Heritage Oaks arising out of the foreclosure sale to Union Bank because Heritage Oaks was not a party to the trust deed and did not buy the property at the foreclosure sale. The trial court ruled that First American had no common law duty toward Heritage Oaks because it was not foreseeable to First American that a negligently conducted foreclosure sale would harm anyone other than the purchaser at that sale. "[W]hile it might be foreseeable that the outside-of-title trustee's sale might harm the purchaser at the foreclosure sale (i.e., Union Bank) it was not foreseeable that subsequent purchasers such as Heritage would be impacted due to the availability of title insurance . . . ."

## Standard of Review

We independently review the trial court's order granting summary judgment. If we determine that there are no material facts in dispute, we may affirm the judgment on any correct legal theory that has been addressed by the parties. (*California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [4 Cal.Rptr.3d 785].) In negligence cases, the question whether the defendant owed a duty of care to the plaintiff is a question of law properly resolved on summary judgment. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745]; *Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 672 [86 Cal.Rptr.2d 490].)

Two separate standards are employed to review the ruling on a demurrer that has been sustained without leave to amend. (*G. L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1091 [93 Cal.Rptr.2d 292].) First, we review the complaint de novo to determine whether it alleges sufficient facts to state a cause of action. We then apply an abuse of discretion standard to determine whether there is a reasonable possibility that the complaint could be cured by amendment. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) If the complaint could be cured by amendment, " 'the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]" (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].)

## Negligence

Heritage Oaks contends that First American owed a duty of care to confirm its own status as trustee under the deed of trust to the Peppertree Property before it recorded the trustee's deed in favor of Union Bank. It was

foreseeable that its failure to do so would harm a subsequent purchaser of the property, Heritage Oaks contends, because a foreclosure sale conducted by anyone other than the trustee of record is void and does not convey title to the property. (See, e.g., *Bank of America, N.A. v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 713 [28 Cal.Rptr.3d 825]; *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 876 [97 Cal.Rptr.2d 255].) Since the initial purchaser does not acquire title in the foreclosure sale, it cannot transfer title to any subsequent purchaser, damaging that purchaser. Heritage Oaks contends that, because the loss to a subsequent purchaser is foreseeable, we should declare that an entity conducting a nonjudicial foreclosure sale of real property owes a duty of care to bidders at the sale and to all subsequent purchasers of the property to confirm that it is the trustee of record for the property before it records a trustee's deed in favor of the successful bidder.

■ The trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and the beneficiary of the deed of trust. . . . [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." (*Vournas v. Fidelity Nat. Tit. Ins. Co., supra*, 73 Cal.App.4th at p. 677, citation omitted.) Consistent with this view, California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust. As our Supreme Court noted in *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281 [216 Cal.Rptr. 438, 702 P.2d 596], "The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes. . . . [¶] . . . [T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes." (*Id.* at pp. 287–288, citations omitted.)

The statutes governing nonjudicial foreclosure in California do not expressly create the duty proposed by Heritage Oaks. (Civ. Code, § 2920 et seq.) In light of our Supreme Court's admonition in *I. E. Associates,* we decline to recognize any additional duties on the part of the trustee. We recognize that *I. E. Associates* does not control the result here because the opinion "deals only with the question of notice that must be given before a foreclosure sale." (*I. E. Associates v. Safeco Title Ins. Co., supra*, 39 Cal.3d at p. 285, fn. 3.) Nevertheless, we are persuaded by the Supreme Court's analysis of the "persuasive policy reasons which militate against a judicial expansion of [the trustee's] duties. The nonjudicial foreclosure statutes—an alternative to judicial foreclosure—reflect a carefully crafted balancing of the interests of

beneficiaries, trustors, and trustees. Beneficiaries, of course, want quick and inexpensive recovery of amounts due under promissory notes in default. Trustors, on the other hand, need protection against the forfeiture of valuable property rights. Trustees, the middlemen, need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation. In taking all of these concerns into account, the statutes strike an overall balance favoring the protection of trustors." (*Id.* at p. 288.)

In our view, these policy reasons militate against the recognition of a duty running from the person or entity that conducts a foreclosure sale to subsequent purchasers of the property being sold. Recognizing such a duty would upset the "carefully crafted balancing" of interests described in *I. E. Associates v. Safeco Title Ins. Co., supra*, 39 Cal.3d at page 288, without increasing the protection afforded to trustors. Nor can we see any principled basis upon which to cut off the number of subsequent purchasers to whom this new duty would be owed. Would a trustee in First American's position owe a duty only to the first subsequent purchaser or to every subsequent purchaser of the property, in perpetuity? If such a theoretical duty were to exist, this would throw into doubt the ownership of every parcel of real property that has ever been the subject of a nonjudicial foreclosure sale. We are unwilling to create that degree of uncertainty in the real estate market in the absence of a specific direction to that effect from the Legislature.

■ Even in the absence of these strong policy considerations we would decline to recognize the duty advocated by Heritage Oaks. "The term 'duty' is only an expression of policy considerations that lead the law to say that a particular plaintiff is entitled to protection." (*Norm I. Krug Real Estate Investments Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 41 [269 Cal.Rptr. 228].) The relevant policy considerations are " '(1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm.' [Citation.]" (*Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 861 [237 Cal.Rptr. 282]; see also *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803–804 [157 Cal.Rptr. 407, 598 P.2d 60]; *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16].)

First, there is no reason to conclude that the foreclosure sale was intended by First American or Union Bank to affect anyone other than the parties to the deed of trust and the successful bidder at the sale. First American's

interest was in selling the property to the highest bidder, regardless of whether the bidder planned to hold or to sell the property. Moreover, the transaction that led to the *Peppertree/Jones* litigation and the need to reform the original deed of trust had occurred months before the foreclosure sale and was intended by the parties to delay or prevent the foreclosure sale entirely. (*Jones v. First American Title Ins. Co., supra,* 107 Cal.App.4th at pp. 384–385.) We cannot conclude that the substitution of trustee and partial deed of reconveyance was intended to affect any parties other than Union Bank and the Peppertree Owners.

Heritage Oaks contends its damages were foreseeable to First American because First American "actively created a title flaw" by placing the trustee's deed to Union Bank in the chain of title. This argument ignores our holding in *Jones.* There, we held that First American was acting under a mutual mistake when it conducted the foreclosure sale and we granted reformation of the deed of trust to cure that mistake. It follows that First American could not have "actively created a title flaw" because it did not know the flaw existed when it conducted the foreclosure sale.

Moreover, if the title flaw and resulting damages were foreseeable to First American, they were equally so to Heritage Oaks. The substitution of trustee and partial deed of reconveyance was a recorded document that could have been as readily discovered by Heritage Oaks's title research as by First American's. Thus, even if First American could foresee that litigation would result from an erroneously conducted foreclosure sale, it could not foresee that a subsequent purchaser would buy the property after conducting a title search and learning that there was such an event in the chain of title.

*Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288 [70 Cal.Rptr.2d 442], confronted a similar situation. There, the trustee under a deed of trust conducted a foreclosure sale without discovering an Internal Revenue Service lien on the property. The buyer at the foreclosure sale later sold the property to a third party whose title insurer was forced to pay off the Internal Revenue Service lien years later. It sued the trustee who prevailed on summary judgment. The Court of Appeal affirmed, holding that damage to the subsequent purchaser was not foreseeable to the trustee. "This is because in the usual course of events, each purchaser of property obtains title insurance of his or her own. The issuer of each policy conducts its own search and will either locate the lien during its preliminary title search and except it—in which case the purchaser can negotiate a new price which takes the lien into account or cancel the transaction—or it will fail to locate the lien, or for other reasons choose not to except it from coverage, and the purchaser will be

protected by the policy." (*Id.* at p. 296.) The same reasoning applies here. The trial court properly concluded that Heritage Oaks's damages were not foreseeable to First American.

■ For the same reasons, we are persuaded that there was only a small degree of certainty that First American's conduct would cause Heritage Oaks harm and a weak connection between its conduct and the alleged injury. We see little basis for assessing moral blame where, as here, all of the parties are sophisticated investors dealing in commercial real estate. Finally, imposing the duty Heritage Oaks advocates would do little to prevent future harm. The *Peppertree/Jones* litigation arose because the parties to a series of transactions misunderstood one of those transactions. Imposing liability for such a mistake is unlikely to make commercial real estate contracts more understandable. Its more predictable result will be to discourage lenders from working with borrowers to delay or prevent foreclosure sales.

### Equitable Indemnity

■ As a matter of law, Heritage Oaks has not and cannot allege facts sufficient to state a cause of action for equitable indemnity against First American. "At the heart of the doctrine [of equitable indemnity] is apportionment based on fault. At a minimum equitable indemnity 'requires a determination of *fault* on the part of the alleged indemnitor . . . .' (*Coca-Cola Bottling Co. v. Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1378 [14 Cal.Rptr.2d 673], italics added.)" (*City of Huntington Beach v. City of Westminster* (1997) 57 Cal.App.4th 220, 224–225 [66 Cal.Rptr.2d 826].) Thus, to state a cause of action for equitable indemnity, Heritage Oaks had to allege that it was jointly and severally liable with First American to the Peppertree Owners. "[O]ne point stands clear: there can be no indemnity without liability. In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." (*Munoz v. Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400]; see also *Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787 [53 Cal.Rptr.2d 725].)

However, we determined in the *Jones* litigation that the Peppertree Owners suffered no compensable damage at the hands of First American. (*Jones v. First American, supra,* 107 Cal.App.4th at pp. 389–390.) First American, therefore, does not share joint and several liability with Heritage Oaks. Heritage Oaks's complaint cannot be amended to allege liability that does not exist. Because there is no fault to apportion, there is no basis upon which First American is liable to indemnify Heritage Oaks. The trial court correctly sustained without leave to amend First American's demurrer to the cause of action for equitable indemnity.

## *Conclusion*

The judgment is affirmed. Costs on appeal to First American.

Gilbert, P. J., and Coffee, J., concurred.