Filed 3/5/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CITRUS EL DORADO, LLC, | |
| Plaintiff and Appellant, | E067938 |
| v. | (Super.Ct.No. RIC1602653) |
| CHICAGO TITLE COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. John W. Vineyard, Judge. Affirmed.

Everett L. Skillman for Plaintiff and Appellant.

Fidelity National Law Group, Paul J. Meshek for Defendant and Respondent.

A commercial developer lost a parcel of real property in a trustee's sale following a nonjudicial foreclosure. It sued the title company that conducted the sale as a trustee. In this opinion, we conclude that a trustee in such a sale is subject to tort liability only for the violation of duties established by the deed of trust and governing statutes, unless the trustee has effectively taken on a different or modified duty by its actions. In this case, the developer, plaintiff and appellant Citrus El Dorado, LLC (Citrus), sued in part for

1

failure to verify certain matters that the trustee, defendant and respondent Chicago Title Company (Chicago Title), had no contractual or statutory duty to verify. For this and other reasons discussed herein, we affirm the trial court's order sustaining without leave to amend Chicago Title's demurrer to Citrus's second amended complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to Citrus's second amended complaint, it purchased the property—an unimproved 9.25-acre parcel in La Quinta, California—with the intention of developing it into a residential housing tract. In 2007, Citrus entered into a "Construction Loan Agreement" with First Heritage Bank, N.A. (First Heritage) to fund construction. Under the terms of the agreement, First Heritage was to disburse to Citrus a total of $13,394,000 "in a series of incremental draws as construction of the development progressed." The loan was secured by a deed of trust on the property.

After Citrus received some, but not all, of the loan funds, First Heritage failed and was placed into a Federal Deposit Insurance Corporation (FDIC) receivership. The FDIC funded several more draw requests by Citrus.

In February 2009, the FDIC notified Citrus that the loan had been assigned to Stearns Bank (Stearns) and that disbursements to Citrus would "be handled out of [Stearns's] headquarters . . . .'" But when Citrus submitted a draw request to Stearns in March 2009, Stearns denied it, even though there was an "'unfunded balance'" of "at least $609,000 in the budgeted loan funds for Citrus."

In April 2009, Stearns sent Citrus a "Notice of Event of Default and Demand for Immediate Payment." The notice stated that payments required under the loan had not

2

been made, constituting an "immediate Event of Default with no rights to cure . . . ." The notice gave Citrus several weeks to remit the "total payoff balance" of over $13 million, including a principal balance of approximately $12.7 million.

In July 2009, Chicago Title recorded a "Substitution of Trustee," substituting Chicago Title as the new trustee under the deed of trust. The document identifies FNBN Rescon I, LLC (Rescon) as the "present Beneficiary" of the deed of trust, and shows that it was executed by Stearns as Rescon's "exclusive servicing agent."[1]

In November 2014, Chicago Title recorded a "Notice of Default and Election to Sell." According to this document, there remained an unpaid principal balance on the loan of approximately $12.7 million, with a total balance due of over $20 million as of October 23, 2014. In February 2015, Chicago Title issued a "Notice of Trustee's Sale," stating that the property would be sold at public auction on March 3, 2015. A "Trustee's Deed Upon Sale," recorded March 6, 2015, indicates that the public auction took place on March 5, 2015, and that Rescon was the highest bidder with a "credit bid" of $7.2 million.

Citrus filed this lawsuit on March 4, 2016. The operative second amended complaint asserts three causes of action against Chicago Title: (1) wrongful foreclosure; (2) wrongful disseisin and ouster; and (3) conspiracy.

---

[1] Stearns and Rescon were separately dismissed from the lawsuit after the trial court sustained without leave to amend their demurrer to the first amended complaint. We address Citrus's challenges to that ruling in a related appeal, *Citrus El Dorado, LLC v. Stearns Bank, N.A. et al*, case No. E067610.

In February 2017, the trial court sustained Chicago Title's demurrer to Citrus's second amended complaint without leave to amend, and it subsequently entered judgment in favor of Chicago Title.

## II.  DISCUSSION

Citrus contends that each of the three causes of action it asserted against Chicago Title in the second amended complaint were adequately pleaded to survive demurrer.  We disagree.

### A.  *Standard of Review*

On appeal from a judgment based on an order sustaining a demurrer, we assume all the facts alleged in the complaint are true.  (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.)  In addition, we consider judicially noticed matters. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  We accept all properly pleaded material facts but not contentions, deductions, or conclusions of fact or law.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  We determine de novo whether the complaint alleges facts sufficient to state a cause of action under any legal theory.  (*Committee for Green Foothills*, *supra*, at p. 42.)  We read the complaint as a whole and its parts in their context to give the complaint a reasonable interpretation.  (*Evans v. City of Berkeley*, *supra*, at p. 6.)

When a trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "The

4

burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*) "[U]nless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

B. *Analysis*

1. *Wrongful Foreclosure Cause of Action*

Citrus's wrongful foreclosure cause of action (like its other two causes of action) arises from allegations that Chicago Title (1) was negligent in failing to verify that Rescon received a valid assignment of the loan; (2) was negligent in failing to verify the authority of the person who signed the substitution of trustee form; and (3) conducted the trustee's sale improperly in various respects, including by selling the property "by way of a private sale purportedly to Rescon," rather than by public auction as required by Civil Code[2] section 2924g, and by accepting a purported "credit bid" that in fact amounted to giving the property to Rescon "literally . . . for free." The first two contentions fail to state a claim because Chicago Title had no duty to make the inquiries Citrus asserts it should have made. The third contention fails to state a claim because it is not adequately supported by the pleaded facts.

"Wrongful foreclosure is a common law tort claim. 'The elements of a wrongful foreclosure cause of action are: "'(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a

_____

[2] Further undesignated statutory references are to the Civil Code.

5

mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering."'" (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525.)

"A beneficiary *or trustee* under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929, italics added.) Nevertheless, "[t]he trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary." (*Id.* at p. 927.) The trustee's "common" agency for both borrower and lender "is a passive one, for the limited purpose of conducting a sale in the event of the trustor's default or reconveying the property upon satisfaction of the debt." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 819 (*Biancalana*).) "'The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.'" (*Heritage Oaks Partners v. First American Title Ins. Co.* (2007) 155 Cal.App.4th 339, 345 (*Heritage Oaks*), quoting *I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 287; see also *Biancalana*, *supra*, at p. 819 ["'"The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist."'"].) The trustee's "'only duties are: (1) upon default to undertake the

steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust.'" (*Heritage Oaks*, *supra*, at p. 345.)

Here, neither the deed of trust nor the governing statutes expressly create a duty on the part of Chicago Title to verify that the beneficiary received a valid assignment of the loan or to verify the authority of the person who signed the substitution of trustee. Citrus has not cited, and we have not discovered, any authority holding a trustee liable for wrongful foreclosure or any other cause of action based on similar purported failures to investigate. To the contrary, the trustee generally "has no duty to take any action except on the express instruction of the parties or as expressly provided in the deed of trust and the applicable statutes." (5 Miller & Starr, Cal. Real Estate (4th ed. 2018) § 13:4, pp. 13-30 to 13-31, fns. omitted [citing *Scott v. Security Title Ins. & Guarantee Co.* (1937) 9 Cal.2d 606, 613; *Biancalana*, *supra*, 56 Cal.4th at p. 819].)

*Heritage Oaks*, *supra*, 155 Cal.App.4th 339, is instructive. In *Heritage Oaks*, at the direction of the beneficiary, the defendant title company acted as trustee by conducting a foreclosure sale, but without first verifying that it was the trustee of record (it was not, due to a mistake by the beneficiary). (*Id.* at pp. 341-342.) The plaintiff, a subsequent purchaser, argued the title company had a duty of care to confirm its status as trustee under the trust deed before foreclosing and could foresee that subsequent purchasers would be harmed by the fact the sale by an entity not a trustee of record did not convey title. (*Id.* at pp. 344-345.) The Court of Appeal rejected the plaintiff's argument, reiterating the settled law, summarized above, regarding the limited scope of

7

the trustee's duties under both the nonjudicial foreclosure statutes and the common law. (*Id.* at pp. 344-346.)

To the same effect is *Fleisher v. Continental Auxiliary Co.* (1963) 215 Cal.App.2d 136, where a deed of trust authorized the trustee to reconvey the security at the written request of the beneficiary. (*Id.* at p. 138.) The plaintiff trustor contended that the trustee had a duty to verify the status of the underlying debt before reconveying the security, and that he had been injured by the trustee's failure to do so. (*Id.* at pp. 138-139.) The court of appeal rejected the argument, finding the trustee had no duty to investigate the status of the underlying debt. (*Id.* at pp. 138-140.)

Applying these principles, we reject Citrus's arguments that Chicago Title had a duty to verify that the beneficiary received a valid assignment of the loan or to verify the authority of the person who signed the substitution of trustee. Such an inquiry is beyond the scope of the trustee's duties as defined by the deed of trust and the applicable statutes, and there is no appropriate basis for imposing tort liability on Chicago Title for failing to take actions that are beyond the scope of its duties.

Citrus's authority does not support a different conclusion. In *Munger v. Moore* (1970) 11 Cal.App.3d 1, the trustee was held liable for wrongful foreclosure. (*Id.* at p. 7.) But the trustee in *Munger* had conducted a trustee's sale after refusing the owner's tender of the sum needed to cure the default. (*Id.* at pp. 5-6.) The trustee, therefore, had violated its duties under the governing statutes by going forward with the sale. (*Id.* at pp. 7-8; see Civ. Code § 2924c [statutory right to cure default].) The facts of this case are different; Citrus never tendered payment of any amount to Chicago Title. Nothing in

8

*Munger* supports extension of the trustee's duties beyond the limited scope defined by the deed of trust and the governing statutes.

Citrus's reliance on *Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742 is similarly misplaced. In *Lupertino*, the borrowers had moved, but had failed to change their address of record. (*Id.* at p. 745.) The trustee mailed a notice of trustee's sale to only the borrowers' address of record, so they did not receive actual notice in time to cure their default. (*Id.* at p. 746.) The trustee, however, had previously been in communication with the borrowers at their then-current address. (*Id.* at p. 745.) The Court of Appeal found that the trustee was equitably estopped from asserting that it had complied with the notice requirements of the nonjudicial foreclosure statutes based on notice sent to the address of record: "We hold that after a *trustee* communicates with the trustor at a given address, leading the trustor to believe that his address is recognized as the receiving point of communication, the trustee cannot later refuse or fail to recognize that address." (*Id.* at p. 749.) In other words, by its actions, the trustee effectively took on the duty of communicating with the borrowers at their then-current address, regardless of the borrowers' failure to update their address of record. No similar issues are raised by Chicago Title's actions in this case.

Citrus's contention that Chicago Title conducted the trustee's sale in an improper manner requires a different analysis than the negligence contentions. The conduct of the sale in accordance with the applicable statutes falls squarely within the trustee's duties "upon default to undertake the steps necessary to foreclose the deed of trust." (*Heritage*

9

*Oaks*, *supra*, 155 Cal.App.4th at p. 345.) The question, then, is whether sufficient well-pleaded facts support Citrus's contention.

We conclude that there were insufficient facts pled. To successfully challenge a foreclosure sale based on a procedural irregularity, the plaintiff must show both that there was a failure to comply with the procedural requirements for the foreclosure sale *and* that the irregularity prejudiced the plaintiff. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 96.) Citrus has failed to plead facts sufficient to make the required showings.

Citrus alleges that the trustee's sale of the property was noticed for March 3, 2015, but the property was not sold until March 5, 2015. Citrus further alleges that the property was, according to the trustee's deed, sold to Rescon for a $7.2 million credit bid. But these facts, without more, do not support Citrus's assertions that Chicago Title failed to properly declare the date, time, and place for the sale; that the sale was made by private sale, rather than public auction; or that the purported "credit bid" was essentially a fraud and in fact "Chicago Title literally gave [the property] away to Rescon for free." Citrus has pleaded no facts showing that the postponement of the trustee's sale was not performed in accordance with statutory requirements. (See § 2924g, subds. (a), (c)(1), (d).) It has pleaded no facts showing that the sale was not conducted as a public auction. And it has pleaded no facts showing that the credit bid made by Rescon was fraudulent or in any other way improper. (See *Biancalana*, *supra*, 56 Cal.4th at pp. 815-816 [discussing credit bids, including noting that for more than a century it has been "'a rule in equity that the beneficiary under a deed of trust may become the purchaser at a sale by the trustee . . . and the trustee may himself make the bid at the instance of the beneficiary,

10

without impairing the validity of the sale'"].)  Additionally, the deed of trust, attached as an exhibit to the second amended complaint, recites compliance with all statutory notice requirements, that the sale was conducted as a public auction, and that the property was sold for a $7.2 million credit bid, not given away for free.  (See *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 831 ["If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly . . . ."].)  Citrus's conclusory assertions to the contrary are inadequate to survive demurrer.

Citrus also contends that the notice of default recorded in November 2014 contained certain "irregularities," specifically, that (1) it was signed only by Stearns, not by Rescon; (2) it listed an incorrect address for Rescon; (3) it listed a phone number for Rescon that actually was that of a Stearns employee; (4) and it listed a "wrongfully-inflated redemption figure."  We are not persuaded that it was improper for Stearns, rather than Rescon, to sign the notice of default.  (See § 2924, subd. (a)(1) [notice of default may be recorded by trustee, mortgagee, or beneficiary].)  Moreover, Citrus has pleaded no facts demonstrating any prejudice flowing from the purported defects in the notice of default, that is, demonstrating that the defect impaired Citrus's "ability to protect [its] interest in the property."  (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 11.)  Although Citrus complains it "was never able to engage in any meaningful discussion" with "the lender concerning the notice of default," there is no specific allegation that this failure to communicate was a result of any inaccuracies in the

11

contact information in the notice of default. Although Citrus alleges that the notice of default stated a "wrongfully inflated redemption figure," it does not plead that it intended at any point to exercise its redemption rights, regardless of the amount. Rather, Citrus asserts that it either fully performed its responsibilities under the Construction Loan Agreement or that Stearns's breach of the agreement "excused [Citrus] from having to do all, or substantially all, of the significant things that the [Construction Loan Agreement] required it to do," including pay off any of the principal or interest on the loan. We conclude that Citrus has pleaded facts demonstrating at most "mere technical violations of the foreclosure process," which do not give rise to a tort claim against Chicago Title. (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408-409.)

In short, the trial court properly sustained Chicago Title's demurrer to Citrus's wrongful foreclosure claim.

### 2. *Remaining Causes of Action*

Citrus's "wrongful disseisin and ouster" and "conspiracy" causes of action are both derivative of its wrongful foreclosure claim. Citrus alleges that "Defendants, and each of them, wrongfully disseized and dispossessed" Citrus of the property "by means of an illegal, fraudulent and/or wil[l]fully oppressive foreclosure." It further alleges that the defendants, including Chicago Title, "entered into an agreement having an overall objective of completing what was actually an illegal, wrongful, fraudulent and/or willfully oppressive foreclosure . . . ." Citrus has not attempted to argue how the remaining two causes of action might still be viable, even if the wrongful foreclosure

12

cause of action is not.  It follows that Chicago Title's demurrer was properly sustained with respect to each of the causes of action asserted in the second amended complaint.

### 3. *Leave to Amend*

Citrus has not attempted to show a reasonable possibility that the pleading defects identified above could be cured by amendment, arguing only that the demurrer should not have been sustained.  Having reviewed the record, we find no abuse of discretion in the trial court's decision to sustain the demurrer without leave to amend.  (See *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

## III.  DISPOSITION

The judgment is affirmed.  Chicago Title is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:


MCKINSTER
Acting P. J.

MILLER
J.

13