Filed 7/19/13; pub. order 8/14/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THRIFTY PAYLESS, INC., | B242573 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468465) |
| v. | |
| THE AMERICANA AT BRAND, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm H. Mackey, Judge. Reversed.

Snell & Wilmer, Mary-Christine Sungaila; Corfield Feld, Richard G. Feld and Michael A. Corfield for Plaintiff and Appellant.

Gordon & Rees, Theresa A. Kirstovich, Eleanor M. Welke and Joel M. Moskowitz for Defendant and Respondent.

————————————

Plaintiff Thrifty/Payless, Inc. (Thrifty) dba Rite Aid, is a tenant of defendant Americana at Brand's (Americana) eponymous shopping center in Glendale. Negotiations held through letters of intent before the execution of Thrifty's lease contained Americana's per square foot estimates concerning Thrifty's probable pro rata share of property taxes, insurance, and common area maintenance (CAM). The final lease stated that Thrifty would pay its pro rata share of such expenses and did not contain any formulas, figures or percentages regarding Thrifty's share of such expenses. After Thrifty moved into the shopping center, its share of these expenses substantially exceeded Americana's estimates and Thrifty sued for fraud, rescission based mutual mistake and mistake of fact, and breach of lease and breach of the implied covenant of good faith and fair dealing. The trial court granted Americana's demurrer without leave to amend, finding that the prior negotiations constituted estimates and could not be statements of fact upon which a claim of fraud could be based, and Thrifty failed to allege facts establishing innocent misrepresentation, mistake, breach of lease, and breach of the implied covenant of good faith and fair dealing. We reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Thrifty is a tenant of Americana's shopping center known as the "Americana at Brand" located in Glendale. In September 2004, before the development of the shopping center, Thrifty and Americana entered into negotiations for Thrifty to lease retail space at the shopping center. James Ashton of AFC Commercial Real Estate Group, Americana's agent, submitted a letter of intent (LOI) dated February 17, 2004 to Thrifty. The LOI detailed the specific terms and conditions of the proposed lease. Three salient items are Thrifty's share of real property taxes, insurance, and common area expenses. Those were estimated as follows:

1.    Annual real property taxes at $3 per square foot;

2.    Annual insurance premiums for the first year of the lease at 80 cents per square foot;

---

[1] In accordance with the rules of appellate review, we treat the allegations of the complaint as true for purposes of demurrer.

3. Annual common area maintenance for the first year of the lease term at $14.50 per square foot.

On May 13, 2004, Tracy Verastegui, Real Estate Director for Thrifty, made changes to the LOI by interlineations and returned it to Ashton. Verastegui requested a breakdown of the common area maintenance obligations for the first year, writing "[p]lease provide [a] budget which justifies the $14.50 estimate as I am not agreeing to this amount [without] seeing the line items."

On May 17, 2004, Ashton returned a revised LOI (final LOI) to Verastegui, providing that Thrifty would pay its pro rata share of CAM, with no caps, estimated at $14.50 per square foot annually. Thrifty crossed out the estimate, and Verastegui wrote in, "Budget to be provided to Tenant prior to lease execution."

On or about September 1, 2004, Howard Durchslag, the Vice President of Leasing and Acquisitions of Americana's parent company, provided Verastegui with a detailed breakdown of the CAM. Durchslag's letter stated, "I have . . . attached our preliminary CAM budget for your eyes only, so that you may be armed with necessary explanations as to CAM costs. Please remember that the costs reflected are purely estimated values." The breakdown provided that the total square footage of the shopping center participating in sharing of CAM would be 450,000 square feet of gross leasable area. Thrifty's proportionate share, based upon its square footage, was 2.2 percent of the total CAM, estimated to be $14.35 per square foot.

On or about February 22, 2005, Thrifty and Americana executed a written lease.[2] The minimum rent commencement date as set forth in the Lease was May 2, 2008. On or about November 6, 2008, Americana and Thrifty executed an amendment to the lease.

---

[2] The lease defined Thrifty's "Pro Rata Share" at paragraph 6.8.1, stating: "'Tenant's Pro Rata Share' is calculated by dividing the Floor Area of the Premises by the Floor Area of the Retail Center which is leased and occupied by tenants as of the commencement of the applicable calendar year, except for the 'floor area' of the Other Stores . . . ." "'Other Stores'" were described in paragraph 6.8, which provided: "Portions of the Retail Center are, or may be, owned or leased from time to time by various persons or entities occupying freestanding

3

The first full year in which Thrifty was obligated to pay its share of taxes, insurance, and CAM was 2009. In 2009, Americana charged Thrifty $169,686 in taxes, instead of the $43,836 that would have been due under the rate specified in the final LOI; Americana charged $28,110 insurance, instead of the $11,689.60 that would have been due under the rate specified in the final LOI; and Americana charged $412,307 for CAM, instead of the $211,874 that would have been due under the rate specified in the final LOI. Despite the LOIs and the breakdown provided to Thrifty by Americana that showed its share of expenses would be 2.2 percent, Thrifty's actual share was more than double at 5.67 percent.

Thrifty's complaint alleged claims for fraud and deceit, negligent misrepresentation, innocent misrepresentation, mutual mistake, breach of the implied covenant of good faith and fair dealing, and breach of lease. Thrifty sought damages and rescission of the lease.

Specifically, for its fraud and negligent misrepresentation claims, Thrifty alleged that Americana knew that the estimated taxes, insurance, and CAM charges were material to Thrifty and that Thrifty was relying on these estimates to evaluate the suitability of the project. Thrifty alleged Americana knew the representations were false at the time they were made, or were made with no reasonable basis to believe they were true. Thrifty asserted its reliance was reasonable based on Americana's superior knowledge and experience building and operating shopping centers of similar size and scope; because Americana was familiar with the level of common area services to be provided, the terms of other leases contemporaneously being negotiated, the insurance policies to be obtained; and because Thrifty had an existing landlord/tenant relationship with an affiliate of Americana and regularly received accurate additional rent estimates from such affiliate.

For its innocent misrepresentation and mutual mistake claims, Thrifty alleged that even if Americana innocently believed the representations were true at the time they were made, because of the parties' mutual mistake, the lease failed to conform to the parties' original intention as to material terms. Thrifty contended that it and Americana were mistaken

facilities or other facilities containing a substantial amount of Floor Area and contributing to the Common Area Operating Expenses on a basis other than that described herein . . . ."

4

regarding Thrifty's true share of the taxes, insurance, and CAM, and Thrifty's consent to the lease was negated by the parties' mutual mistake.

Thrifty alleged that Americana breached paragraph 1.1. of the lease by failing to allocate additional rent[3] obligations to the nonretail portion of the shopping center.[4] Further, Americana breached the implied covenant by entering into leases with other tenants which disproportionately shifted costs to Thrifty, failed to allocate additional rent obligations to the nonretail portions of the project as required by the lease, and failed to properly account for and apply revenue generated by landlord's use of the common areas to the ongoing expense of the common areas.

Americana's demurrer argued that Thrifty agreed in the lease at paragraph 20.3[5] that it was entering into the lease based on its own investigation; Thrifty failed to allege that Americana had breached a specific term of the lease; implied terms of the contract could not

---

[3] "Additional Rent" is defined in the lease at paragraph 3.3 as those rental obligations in addition to the base monthly rental, and include but are not limited to the obligation to pay common area expenses as defined in section 6.5. "'Common Area . . . Expenses'" are defined in paragraph 6.5 to include cleaning, rubbish removal, labor costs, utilities, upgrades and repair to the common area, as well as insurance and taxes.

[4] Paragraph 1.1 provided in relevant part: "The Overall Project . . . shall include space used for other than retail purposes (the 'Non-Retail Portion') . . . .The Non-Retail Portion shall be operated in part by Landlord and in part by parties unaffiliated with Landlord. The Non-Retail Portion, including any common areas exclusively serving the Non-Retail Portion, will be operated separately from the Retail Center and for purposes of this Lease shall be deemed to not be a part of the Rental Center, and no expenses for the operation of the Non-Retail Portion shall be charged to the Tenant. . . . Landlord shall allocate Real Property Taxes for the Overall Project between the Non-Retail Portion and the Retail Center . . . based on records the County Assessor . . . [or] based on sound accounting and management principles. In addition, Landlord, in its reasonable discretion, shall allocate certain Common Area Operating Expenses between the Non-Retail Portion and the Retail Center, based on usage, burden and value, using sound accounting and management principles."

[5] Paragraph 20.3 provides in relevant part: "This Lease . . . set[s] forth the entire agreement between the parties. Tenant enters into this Lease on the basis of its own independent investigation only and not any statement or representation of anyone else, including without limitation Landlord or Landlord's employees or agents . . . ."

5

contradict the express terms, and thus the lease permitted Americana to collect the CAM charges in the manner it did; and the lease contained an integration clause at paragraph 20.3 such that prior negotiations and discussions, which were no more than "estimates," were merged into the lease.

In response, Thrifty argued that the integration clause did not bar its claims because evidence of the prior negotiations were admissible to show fraud and mistake; defendant had superior knowledge regarding CAM expenses and Thrifty was entitled to rely on its representations; and sections 1.1, 6.5, and 6.8.2 of the lease set forth the CAM allocation obligations pursuant to a series of formulas, definitions and cross-references.[6]

In reply, Americana asserted that the integration clause meant the final LOI was superseded by the lease, and they were nothing more than estimates on which Thrifty was not entitled to rely; Thrifty failed to plead any mistake on the part of Americana; and Thrifty could not show the estimates were false when made.

At the hearing, Thrifty argued that a fraud case could be based on estimates, citing *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784 (*McClain*) and *Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069 for the proposition that if a party makes an estimate that it knew or should have known was inaccurate, the party can be liable for misrepresentation. The trial court responded that Americana's statements were estimates, putting the duty on Thrifty to verify the figures. Thrifty advised the court that since the time it had filed the complaint, it had learned that Americana was telling other tenants that their pro rata shares would be substantially higher than the rates represented to Thrifty, and Americana had cut a deal with a movie theater to charge it less than its pro rata share based on square

---

[6] Paragraphs 6.5 and 6.8.2 relating to CAM contained no per square foot figures or percentages as set forth in the final LOI, but provided in relevant part as follows:

Paragraph 6.5: "Tenant shall be liable for Tenant's Pro Rata Share of the [CAM] which are incurred during the Lease Term by Landlord . . . . including . . . Real Property Taxes . . . all insurance premiums . . . for insurance coverage selected by Landlord . . . ."

Paragraph 6.8.2: "Tenant shall pay to Landlord, without offset, Tenant's Pro Rata Share of the Common Area Operating Expenses . . . ."

footage. Further, paragraph 1.1. of the lease stated that landlord had a duty to reasonably allocate the CAM charges among the tenants. The trial court sustained the demurrer without leave to amend, finding the figures in the final LOI were only estimates; Thrifty pleaded no facts showing Americana was mistaken about the figures; Thrifty pleaded no facts showing Americana made any innocent misrepresentations or the parties were mutually mistaken, and Thrifty pleaded no facts showing a breach of contract or the implied covenant.

## DISCUSSION

### I. Standard of Review

"The function of a demurrer is to test the sufficiency of [a pleading] as a matter of law," and "we apply [the] de novo standard of review [in an] appeal" following the sustaining of a demurrer without leave to amend. (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.) A complaint "is sufficient if it alleges ultimate rather than evidentiary facts," but the plaintiff must "set forth the essential facts of his [or her] case with reasonable precision and with particularity sufficient to acquaint [the] defendant with the nature, source, and extent" of the plaintiff's claim. Legal conclusions are insufficient. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 & 551, fn. 5.) "We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law." "[T]he trial court [errs in] sustain[ing] a demurrer if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

### II. Analysis

Thrifty argues that the trial court erroneously concluded that estimates are never actionable; on the contrary, estimates can support a claim for fraud, and Thrifty could reasonably rely on Americana's estimates due to Americana's superior knowledge of the shopping center. Further, the complaint adequately alleged innocent misrepresentation and mutual mistake because it alleged Americana was mistaken when it understated the common

area expenses.  Finally, Thrifty contends Americana's discretion to allocate costs must be exercised reasonably, and its failure to do so would support Thrifty's claims for breach of contract and breach of the covenant of good faith and failing dealing.  Americana counters that its estimates were nonactionable opinions and predictions; Thrifty had not alleged that Americana had information that the true costs would be higher than its estimates; Americana couched the estimates as such and advised Thrifty the payments were not capped by the estimate, thus Thrifty could not reasonably rely on them; the lease's integration clause bars introduction of the prior negotiations; and there is no breach of contract or of the implied covenant because Americana in its discretion could allocate expenses.

> *A.*        *Fraud Exception to Parol Evidence Rule:  Thrifty's Claims for Fraud and Negligent Misrepresentation (First and Second Causes of Action)*

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "In contrast, . . . [a claim for] negligent misrepresentation does not require knowledge of falsity"; rather, the plaintiff must show "(1) the misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages." (*Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.)  Every element of the fraud cause of action must be pleaded specifically, and the policy of liberal construction of the pleadings will not sustain a defective pleading.  (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332.)  Thus, the plaintiff must plead the ""'"how, when, where, to whom, and by what means the representations were [made].""'" (*Lazar*, at p. 645.)

"'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.'" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.)  On the other

8

hand, "'[i]f the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, however, he will be denied a recovery.'" (*Id*. at p. 1240; *Seeger v. Odell* (1941) 18 Cal.2d 409, 415.) Plaintiff must also plead the injury or damage suffered and its causal connection to plaintiff's reliance on the defendant's misrepresentations. (*Service by Medallion, Inc. v. Clorox Co*. (1996) 44 Cal.App.4th 1807, 1818.) A defrauded party may elect to stand on the contract and recover damages, or rescind the contract. (*McClain*, *supra*, 159 Cal.App.4th at p. 793, fn. 1.)

The parol evidence provides that an integrated written agreement may not be varied by extrinsic evidence to alter or add to the terms of the writing. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) The parol evidence rule protects the integrity of written contracts by making their terms the exclusive evidence of the parties' agreement. Yet an established exception to the rule allows a party to present extrinsic evidence to show that the agreement was procured by fraud. (Code Civ. Proc., § 1856, subd. (g); *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1174–1175 (*Riverisland*).)

*Riverisland* revisited and reaffirmed the vitality of this exception and overruled *Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258 (*Pendergrass*). Criticized but followed by California courts, *Pendergrass* required that evidence offered to prove fraud "must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing." (*Pendergrass*, at p. 263; see *Riverisland*, *supra*, 55 Cal.4th at p. 1172.) Quoting *Ferguson v. Koch* (1928) 204 Cal. 342, 347, *Riverisland* reaffirmed that "'[i]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud.'" (*Riverisland*, at p. 1182.) Thus, characterizing *Pendergrass* as "an aberration," that "finds no support in the language of the statute codifying the parol evidence rule and the exception for evidence of fraud," the Supreme Court overruled *Pendergrass.* (*Riverisland*, at pp. 1172, 1182.)

9

Applying the fraud exception rule is *McClain*, *supra*, 159 Cal.App.4th 784, where the prospective tenant, McClain, investigated leasing space at defendant's shopping center. She was informed the premises consisted of 2,624 square feet at a rent of $1.45 per month, plus 23 percent of the shopping center's common expenses based on this square footage. (*Id.* at p. 793.) Before entering into the lease, she attempted to measure the square footage of the space but was rebuffed by the landlord, who was "offended" by her request. (*Ibid.*) "[T]he lease described the size of the unit leased by McClain as 'approximately 2,624 square feet,' and attached to the lease . . . a diagram of the shopping center that represent[ed] the size of the unit as 2,624 square feet." The lease further provided, "'Unless otherwise provided herein, any statement of size set forth in this Lease, or that may have been used in calculating Rent, is an approximation which the Parties agree is reasonable and any payments based thereon are not subject to revision whether or not the actual size is more or less.'" Finally, the lease stated, "'Lessee acknowledges that: (a) it has been advised by Lessor . . . to satisfy itself with respect to the condition of the Premises . . . , and their suitability for Lessee's intended use, [and] (b) Lessee had made such investigation as its deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises.'" (*Id.* at p. 790.) When the plaintiff obtained the earthquake insurance for the property, she discovered the square footage of her retail space and her percentage of the gross square footage of the mall were substantially overstated. (*Id.* at p. 793.)

*McClain*, *supra*, 159 Cal.App.4th 754 held the landlord's statements were actionable fraud even though the lease stated she had verified the square footages. *McClain* applied the rule that a party to a contract who committed fraud in the inducement cannot absolve himself or herself from fraud by any stipulation in the contract, either that no representations were made, or that any right that might be grounded upon them was waived. "'Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, including the waiver provision.' [Citation.]" (*Id.* at p. 794, italics omitted.)

10

Similarly, in *Furla v. Jon Douglas Co.*, *supra*, 65 Cal.App.4th 1069, a broker listed a home in the multiple listing service as having 5,500 square feet, and included the statement, "'Information Deemed Reliable But Not Guaranteed.'" The broker told the plaintiff that the plans used the construct the house showed it was 5,500 square feet. (*Id.* at pp. 1072–1073.) Plaintiff, an investor, based his real estate investment strategy on the square footage of distressed properties that he bought. (*Id.* at. p. 1073.) The written offer stated that the buyer was aware that the broker made no representations with respect to the square footage. (*Id.* at pp. 1073–1074.) An appraisal obtained during escrow established the square footage at 4,311, but plaintiff did not receive the appraisal during escrow. (*Id.* at p. 1076.) *Furla* rejected the broker's defense based upon exculpatory language in the contract, finding that it was a fact question that could not be resolved on summary judgment whether the plaintiff reasonably relied on the defendant's approximations of square footage. "A statement couched as an opinion, by one having special knowledge of the subject, may be treated as an actionable misstatement of fact." (*Id.* at p. 1080.)

Here, under *Riverisland*, *supra*, 55 Cal.4th 1169, extrinsic evidence is admissible to establish fraud or negligent misrepresentation in the face of the lease's integration clause. Thus, Thrifty can allege both intentional and negligent misrepresentations based upon Americana's grossly inaccurate estimates.[7] In addition, the information Thrifty presented at the hearing on the motion further establishes that Americana knew or should have known the information was inaccurate—Americana told other prospective tenants that their pro rata shares would be substantially higher than the rates represented to Thrifty, and Americana cut a deal with a movie theater to charge it less than its pro rata share based on square footage. Thus, although the express language of lease (such as in paragraph 6.8) may sanction such conduct, the conduct can also support an inference that Americana had misrepresented to Thrifty its share of the common expenses. At the demurrer stage, Thrifty should be able to amend its complaint to allege additional facts in support of its misrepresentation theory.

---

[7] Indeed, the huge disparity between the estimates and the ultimate costs supports an inference of misrepresentation.

11

Further, Thrifty had adequately pleaded facts to show its reliance was reasonable given the parties' previous dealings (through an affiliate of Americana) and because Americana had superior knowledge and information: Americana likely had a better understanding of how the property would be assessed for tax purposes and what insurance coverage would cost; such knowledge would form the basis of its share calculations for its tenants, and as an owner and manager of other shopping malls, could better calculate the cost of running the common facilities. Since Americana had all or most of the information regarding the unfinished shopping center, Thrifty was not in a position to discover for itself a close approximation of the ultimate common costs.

For this reason, Americana's reliance on *Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, is misplaced. There, a landlord falsely represented to a prospective tenant that large, national chains would be leasing space in the mall and asserted that such statements were nonactionable opinion. *Hinesley* disagreed, stating: "The definite description of where [the tenants] were going to be located and that they were going to be operating by the end of the calendar year suggested they were already tenants of [the shopping mall] in the process of opening their businesses. This was a false assertion of existing fact, not an opinion regarding future actions of third parties." *Hinesley* concluded factual issues existed with respect to the extent of the misrepresentations. (*Id*.at p. 297.) However, the lease contained a provision that expressly accorded the landlord the exclusive right to select other tenants, and recited that the plaintiff had not relied on any representation regarding other tenants, but the provision did not absolve the landlord of fraud because the lease was merely a factor to be considered in evaluating justifiable reliance. (*Id.* at pp. 296–297.)

The trial court therefore erred in sustaining Americana's demurrer to Thrifty's first and second causes of action for fraud and negligent misrepresentation, and Thrifty should be permitted to amend its complaint to set forth additional facts supporting these claims.

12

### B. Innocent Misrepresentation, Mutual Mistake (Third and Fourth Causes of Action)

Where, through mistake, the contract does not reflect the mutual intention of the parties, "such intention is to be regarded, and the erroneous parts of the writing disregarded." (Civ. Code, § 1640.) In the case of mutual mistake, the contract may be reformed to conform to the intent of the parties. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524.) "In determining whether [there has been] a mutual mistake . . . , [the] court may consider parol evidence," and such evidence may be introduced in the face of an integration clause. "Extrinsic evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those contentions." (*Id.* at p. 525.) Ordinary negligence does not bar a claim for mutual mistake because "'[t]here is an element of carelessness in nearly every case of mistake.'" (*Id.* at p. 529.) "Only gross negligence or 'preposterous or irrational' conduct will [bar] mutual mistake." (*Ibid.*) Mistake must be pleaded with some particularity so that there is "a clear recitation of facts showing how, when and why the mistake occurred." (*George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1132.) Generally, there is no tort of innocent misrepresentation. (See *Deidiker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 297 [if representation "'is honest and reasonable, . . . there is no *tort liabnility*"].)

Here, Thrifty's third cause of action for innocent misrepresentation asserts in detail the following: the names of the agents of Americana who made the representations, the statements were made before the lease was executed, and that Thrifty's actual percentage of taxes, insurance and CAM was 5.67 percent, as opposed to the represented 2.2 percent in the final LOI. Further, Thrifty alleged that although Americana believed in the truth of the representations, they were false when made, and that Thrifty reasonably relied on the representations because of Americana's superior knowledge of the size and scope of the shopping center, the level of common area services to be provided, the tax basis of the shopping center, and the insurance policies to be used. Thrifty's fourth cause of action for

13

mutual mistake claim solely asserts that neither party was aware that Americana's figures were understated.

Although there is no tort of "innocent misrepresentation," taken together, Thrifty's third and fourth causes of action set forth sufficient particular facts to satisfy the pleading requirements to entitle it to reformation and rescission based upon the lack of mutual assent in the formation of the lease. Therefore, the trial court erred in sustaining the demurrer without leave to amend to these claims seeking reformation and rescission.

### C. Breach of Contract and Breach of the Implied Covenant (Fifth and Sixth Causes of Action

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) "'The [implied] covenant of good faith and fair dealing[ ] [is] implied by law in every contract.'" (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1369.) The covenant is read into contracts and functions "'as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'" (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031–1032.) The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes. (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 417.) A breach of the implied covenant of good faith is a breach of the contract (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393), and "breach of a specific provision of the contract is not . . . necessary" to a claim for breach of the implied covenant of good faith and fair dealing (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373 & fn. 12).

Here, the terms of the contract simply provide for Thrifty to pay its pro rata share of common expenses (taxes, insurance, and CAM), and no precise "pro rata share" in terms of a

percentage or a square foot basis is set forth.  Merely charging higher rates for these items than estimated during negotiations does not ostensibly breach the express language of the lease.  However, Thrifty has alleged Americana has breached paragraph 1.1 by improperly exercising its discretion in allocating costs between retail and nonretail space; this conduct as alleged can constitute both a breach of contract and breach of the implied covenant.  Thus, the trial court erred in sustaining the demurrer to Thrifty's fifth and sixth causes of action.

**DISPOSITION**

The judgment is reversed.  Appellant is to recover its costs on appeal.


JOHNSON, J.


We concur:


MALLANO, P. J.


CHANEY, J.


15

Filed 8/14/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THRIFTY PAYLESS, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE AMERICANA AT BRAND, LLC,<br><br>    Defendant and Respondent. | B242573<br>(Los Angeles County<br>Super. Ct. No. BC468465)<br><br>CERTIFICATION AND<br>ORDER FOR PUBLICATION |

THE COURT:*

    The opinion in the above-entitled matter filed July 19, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


    * MALLANO, P. J.        CHANEY, J.        JOHNSON, J.