Filed 1/29/26  Moore v. Bank of America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT D. MOORE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants and Respondents. | B338611<br><br>(Los Angeles County<br>   Super. Ct. No. 23BBCV00957) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Affirmed.

Krane & Smith, Daniel L. Reback and Jeremy D. Smith, for Plaintiff and Appellant.

McGuire Woods, Jessica E. James and Adam F. Summerfield, for Defendants and Respondents.

# INTRODUCTION

Robert D. Moore obtained a home equity line of credit (HELOC) from Bank of America, N.A., in 2006.  In 2016 the Bank initiated foreclosure proceedings. Moore sued.  In 2022 Moore and the Bank reached a settlement agreement providing in part that Moore would pay the Bank $675,000 and would not oppose a future foreclosure if he did not comply.

Moore did not make the payment.  The Bank again noticed a foreclosure sale; Moore sued again. Moore alleged the Bank was required to take steps to help him secure a new loan to pay off the settlement agreement, such as writing letters to potential lenders or changing the tax form the Bank issued to him.  The Bank demurred.  The trial court sustained the demurrer without leave to amend, finding in part that nothing in the settlement agreement obligated the Bank to assist Moore in obtaining financing.

Moore appealed.  He does not challenge the demurrer ruling.  He argues only that he should be allowed to amend the complaint to allege that the Bank had an implied duty under the settlement agreement to "clear title" on his property so that he could obtain funding from a new lender.  This is a rehash of the same argument the trial court rejected about the Bank's obligations to assist Moore in obtaining financing.  Thus, it does not demonstrate that defects in Moore's complaint can be cured by amendment.  We therefore affirm.

It appeared to this court that Moore pursued this appeal solely to delay the foreclosure. We therefore issued an order to Moore and his counsel to show cause as to why sanctions should not be imposed.  (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a)(1).)  Moore responded in a written ruling and the parties

addressed the issue at oral argument.  We discharge the order to show cause without imposing sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Previous lawsuit and settlement*

Moore purchased a home in North Hollywood in 2002.  In 2006, he obtained a $400,000 HELOC from the Bank.  In 2007, he increased the HELOC principal to $500,000.

In October 2016, Quality Loan Service Corporation (QLS), the substituted trustee on the HELOC-related deed, executed a notice of default on the HELOC.  QLS recorded the notice of default.  QLS recorded notices of trustee sales in January 2017 and January 2018.

In 2017 Moore sued the Bank and QLS, challenging the impending foreclosure.  The parties settled the lawsuit in 2022.  According to the settlement agreement, the Bank would pay Moore $175,000 in exchange for a dismissal and a completed W9 tax form.  Moore would pay the Bank $675,000 "[b]y no later than June 1, 2022," "in exchange for a release of the lien/deed of trust on the" HELOC.  The Bank would then "record a Reconveyance/Release of Mortgage/Satisfaction of Mortgage."  Moore consented to an "uncontested" non-judicial foreclosure if he did not comply with the terms of the settlement agreement.  Moore also "unconditionally and irrevocably" released the Bank and all associates from any claims relating to the HELOC or the property.

Moore requested several extensions of the deadline to pay off his $675,000 debt under the settlement agreement; the Bank agreed.  Moore did not make the payment by the extended deadline.  A new notice of trustee's sale was recorded in April 2023.

3

B.    *This case*

   1.    *Complaint and first amended complaint*

Moore filed a complaint against the Bank and QLS on May 2, 2023, stating that the foreclosure sale was set for May 4, 2023. Moore alleged causes of action for wrongful foreclosure, quiet title, and other causes of action, and sought a temporary restraining order (TRO) to halt the allegedly wrongful foreclosure sale. The court granted the TRO, and set a hearing for a preliminary injunction. On July 14, 2023, the trial court denied Moore's request for a preliminary injunction.

Moore's first amended complaint (FAC), filed on November 27, 2023, alleged five causes of action, styled as follows: 1. Declaratory relief to prevent a pending foreclosure sale that would be wrongful; 2. Prohibit or set aside trustee's sale and any subsequent sale; 3. Prohibit or void or cancel trustee's deed upon sale; 4. Quiet title; 5. Claim to all equity proceeds in the event of a foreclosure sale to prevent unjust enrichment.[1] The FAC stated that the foreclosure sale was scheduled for December 12, 2023. The sale had been set for May 2023, but it was postponed twice due to the TRO.

The FAC noted the previous litigation; it referenced and incorporated the settlement agreement, which was filed as an exhibit to Moore's May 2023 complaint. Moore alleged that after the settlement agreement, he "just needed [the Bank] to make a simple statement to his new lender that upon payment of the $675,000, [the Bank's] lien/deed of trust would be released. But [the Bank] refused to ever give Moore's lender the simple

---

[1]    The FAC included additional factual allegations not discussed here; only allegations relevant to Moore's argument on appeal are included in this summary.

4

statement they [*sic*] needed until it was too late for Moore to obtain a viable loan to pay off the settlement." Moore also alleged that the Bank "refused to modify the 1099 Tax Form" which declared that the $175,000 settlement payment from the Bank to Moore was personal income to Moore, rather than a payment to Moore's two corporations. Changing the form would "make it possible for [Moore] to get the loan he needs to pay off the $675,000 settlement."

Moore further alleged that the indebtedness amount in the April 2023 notice of trustee sale did not include "any accounting or any proper explanation of the basis for this claim of $718,487.03 in indebtedness, despite numerous requests by Moore and his attorney for copy [*sic*] of this information." Moore alleged that the Bank was required to serve him with a new notice of default relating to the settlement agreement, but it did not. He further stated that he "needs [the Bank] to not obstruct his ability to get that loan and thereby prevent him from fulfilling the settlement agreement."

Moore alleged that the foreclosure sale would be wrongful "due to the obstruction of Moore's efforts to payoff settlement [*sic*] by [the Bank]. . . . He just needed [the Bank] to make a simple statement to his new lender," but the Bank "refused to ever give Moore's proposed lenders the simple statements he needed." In his cause of action for quiet title, Moore alleged that he was the rightful owner of his home, the Bank sought to "claim an interest" in it, but the Bank had "no right to title or interest" in Moore's home. Moore prayed for declaratory relief, various orders stopping or voiding any sale of the property, an order quieting title, civil penalties, attorney fees, and costs.

5

2.      *Demurrer*

The Bank demurred to the FAC on the grounds that each cause of action failed to state facts sufficient to constitute a cause of action and was uncertain.  (Code. Civ. Proc., § 430.10, subds. (e), (f).)[2]  The Bank also filed a request for judicial notice.

The Bank argued that Moore "brought this frivolous lawsuit to stop a valid foreclosure on the Property."  It asserted, "Despite several extensions and accommodations, [Moore] failed to make the settlement payment and thus foreclosure proceedings have been reinitiated."  The Bank noted that according to the settlement agreement, Moore "explicitly agreed not to contest foreclosure if he failed to perform under the settlement agreement," yet Moore was doing just that.

The Bank stated that its "counsel—as a courtesy—sent [Moore] *four* Settlement Payoff Letters all of which at least stated that [the Bank] would accept $675,000 to release the subject lien, and as an additional courtesy extended [the] deadline to make the Lien Release Payment—the last of which expired on November 15, 2022."  Communications between Moore and the Bank were included in the Bank's request for judicial notice.  The Bank continued, "Accordingly, foreclosure proceedings were reinitiated and a new Notice of Trustee's Sale was recorded by QLS on April 11, 2023 noticing a May 4, 2023 foreclosure sale date, and indicating that the unpaid balance and charges owed on the HELOC were approximately $718,487.03 around that time."  The Bank asserted, "In an effort to stop the May 4, 2023 foreclosure sale, Plaintiff filed the instant lawsuit on May 2, 2023."

---

[2]      QLS filed a joinder to the Bank's demurrer.  It is not a party to this appeal.

6

The Bank contested Moore's assertion that it had an obligation to help him obtain a loan to pay off the settlement agreement. The Bank noted the trial court's written ruling denying Moore's request for a preliminary injunction, in which the court found that the Bank "was under no obligation to assist Mr. Moore in obtaining a loan or to stretch the truth to make him look better to a new lender. [The Bank] has provided 4 Settlement Payoff Letters to [Moore] and extended the date to obtain payment 4 times. Neither the settlement agreement nor any claim in this lawsuit can support a legal duty to undertake these actions." The Bank further argued that each cause of action in Moore's FAC failed.

In his opposition to the demurrer, Moore argued that the Bank was inappropriately attempting to argue the facts of the case. He further asserted that each cause of action was valid, and the demurrer should be overruled. He requested leave to amend the complaint if the court were to sustain the demurrer. The Bank filed a reply in support of its demurrer.

3. *Court ruling*

At the demurrer hearing on February 23, 2024, the trial court took the matter under submission. There is no reporter's transcript from the hearing.

The court issued a written ruling on March 1, 2024 sustaining the demurrer. The court granted the Bank's request for judicial notice. The court found that "Moore's case is defeated by the terms of the settlement agreement that he signed, and that he has incorporated into his pleadings." The court noted that the settlement agreement "releases all claims against [the Bank] and its agents" relating to the HELOC or the property, and states that Moore would allow an "uncontested foreclosure" if he

7

failed to make the required payment.  As for Moore's contention that the Bank failed to provide Moore with statements for new prospective lenders, the court found that "this claim is completely without merit. . . . [The Bank] was not under any obligation to assist in financing."  The court also rejected Moore's claim that the Bank was required to do anything different with respect to the 1099 form it issued to Moore.  The court concluded, "Thus, the terms of the settlement, which Mr. Moore himself has put before the Court, show that all of his present claims were previously released, and that he himself is in violation of the Settlement Agreement by contesting a foreclosure he previously agreed not to contest."

The court denied Moore's request for leave to amend the complaint, stating, "Whatever the way in which Mr. Moore has pled the case, it seems that his objective is to find a way to stop a foreclosure that he has already agreed to permit. . . . [T]he Court cannot see a hypothetical situation in which Mr. Moore could allege a valid cause of action to accomplish his goals of further preventing foreclosure.  Accordingly, the Court will not grant leave to amend."

The court entered judgment in favor of the Bank.  Moore timely appealed.

**DISCUSSION**

A.    *Leave to Amend*

On appeal, Moore does not challenge the trial court's ruling on the demurrer. Rather, he asserts only that he should be allowed leave to amend the FAC.  Moore argues that he could have "added additional facts to the complaint" showing how the Bank "ignored [Moore's] many pleas that the Bank simply clear title to his home to effectuate a home refinance."  He asserts that

8

"the Bank's refusal to clear title" was "a fact not developed in the FAC." He contends that the Bank's "refusal to clear title—despite knowing [Moore's] compliance with the Settlement Agreement depended on him securing a loan—was objectively unreasonable." Moore contends these allegations in an amended complaint would "support viable claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and wrongful foreclosure." The Bank argues that none of Moore's allegations supports a viable cause of action, and the settlement agreement bars Moore's claims despite his proposed changes.

Where a "demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment. [Citation.] The burden is on [the] plaintiff[ ] to prove that amendment could cure the defect." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.) A plaintiff may "'meet this burden by identifying new facts or theories on appeal.'" (*Roe v. Hesperia Unified School District* (2022) 85 Cal.App.5th 13, 24.)

Moore has not met this burden. Although he briefly asserts that he could allege a breach of contract claim, he does not identify any part of the settlement agreement (or any other contract) that would support such a cause of action. Nor does he support his contention that he could allege a cause of action for wrongful foreclosure. When an appellant raises a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited. (See, e.g., *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

The only argument Moore develops in his appellate briefing involves the implied covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied by law in every

9

contract.  (See, e.g., *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2025) 112 Cal.App.5th 519, 556; *Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.)  The covenant "functions "'as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'"'"  (*Thrifty Payless, supra*, 218 Cal.App.4th at p. 1244.)

Moore's contentions as to breach of the implied covenant of good faith and fair dealing are effectively the same as his contentions below: that the Bank was obligated to take steps to assist Moore in securing financing, which Moore would then use to meet his obligations under the settlement agreement.  Moore proposes a slight twist to this argument by alleging that the Bank had a different obligation ("clearing title" to the property, rather than issuing a letter to lenders or changing the 1099 form), and by styling it as a cause of action not alleged in the FAC.  These changes do not make the proposed cause of action different from those alleged in the FAC. A "cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798; see also *Plotnik v. Meihaus* (2012) 208 Cal. App. 4th 1590, 1612 ["'"Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief"'"].)  Moore's argument on appeal asserts the same duty alleged in the FAC (a duty to assist Moore in obtaining financing) and same harm (Moore's failure to obtain financing and resulting breach of the settlement

10

agreement).  Moore's proposal to assert the same substantive claim styled as a different cause of action is insufficient to show that the defect in the FAC can be cured by amendment.

Moreover, the settlement agreement contradicts Moore's claim that the Bank had an implied duty to help him obtain financing.[3]  The implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349-350.)  Moore does not cite any portion of the settlement agreement that suggests the Bank had an implied duty to assist him in meeting his obligations under the settlement agreement. Nothing in the settlement agreement suggests that Moore's obligations are contingent upon him obtaining financing.  Moore also does not define what he means by "clearing title" to his property; he argues only that clearing title is "a simple, ministerial task" or a "ministerial, mundane task" that the Bank should have completed.  The settlement agreement states that the Bank's lien or deed of trust will be released upon Moore's payment of $675,000, which did not happen.  Thus, Moore has not demonstrated that the deficiencies in the FAC could be cured by adding this cause of action, because the duties Moore proposes are not implied in the settlement agreement.

B.      *Sanctions*

The Bank did not move for sanctions.  However, a reviewing court may sanction a party on its own motion when it

---

[3]      Documents attached to a complaint and incorporated by reference become part of the complaint and may be considered for purposes of a demurrer.  (*County of San Bernardino v. Superior Court* (2022) 77 Cal.App.5th 1100, 1107.)

appears that an appeal is frivolous or taken solely for delay. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a)(1).)  In light of the settlement agreement, the posture of this case, and the unsupported arguments in the appellate briefing, we sent notice to Moore and his counsel, Daniel Reback of Krane & Smith, APC, that we were considering imposing sanctions for the prosecution of an appeal taken solely for delay.  "An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process"; it "ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

Moore and his counsel filed a written opposition, and the parties addressed the issue at oral argument.  Although Moore's arguments are unpersuasive and this appeal appears dilatory, we are mindful that sanctions "should be used most sparingly to deter only the most egregious conduct."  (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 651.)  On the record before us, we find that sanctions are not warranted.

## DISPOSITION

The judgment is affirmed.  The order to show cause re sanctions is discharged.  The Bank is entitled to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.                                TAMZARIAN, J.


12