Filed 2/24/22  Cal. Finest 420 v. Cookies SF CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA FINEST 420, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COOKIES SF LLC, et al., <br><br> Defendants and Respondents. | H049073 <br> (San Benito County <br> Super. Ct. No. CU2000190) |

Plaintiff and appellant California Finest 420, Inc. (California Finest), appeals the sustaining of a demurrer to its complaint alleging breach of contract and fraud stemming from a 2015 licensing and promotion agreement (agreement) with defendants Cookies SF LLC (Cookies) and Gilbert Milam, Jr. (Milam) (together, defendants).  The parties disagree over whether defendants' sale of shares of California Finest in 2017 terminated the agreement by its own terms so that no claim for breach could be stated based on subsequent actions.

We conclude that defendants' sale of shares did terminate the agreement and therefore the demurrer was properly sustained without leave to amend as to the breach of contract cause of action.

We further conclude the complaint's fraud allegations lacked the requisite particularity so the demurrer was properly sustained as to that cause of action as well, and California Finest failed to carry its burden of showing how it could be reasonably cured by amendment.  Accordingly, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

California Finest and Cookies are entities involved in the cannabis and marijuana industry.  Milam is a brand ambassador and influencer in that industry and the officer and manager of Cookies.  Scott McPhail is the president and manager of California Finest.

In 2015, the parties entered into a contract whereby defendants granted California Finest a license to use their images and trademarks for promotional purposes, and Milam agreed to perform certain activities to promote California Finest, in exchange for defendants receiving 150 shares of California Finest stock.

In 2017, defendants sold those 150 shares back to McPhail and then provided notice that the agreement had been terminated by virtue of that sale.  California Finest disagreed and commenced this lawsuit.

## A. Complaint

According to the complaint, California Finest and defendants entered into a written agreement on September 23, 2015, to be performed in San Benito County.  Although the complaint did not attach the complete agreement, it alleged that it included provisions whereby defendants granted California Finest "an exclusive, worldwide, perpetual, non-transferable, and irrevocable license" to "use rights of publicity" with respect to Milam's trade name and image and the Cookies' trademarks and trade names, in connection with advertising or promoting California Finest and its marijuana cigarette products.

Milam also agreed to use commercially reasonable efforts to promote California Finest, including through in-person appearances, for a period of one year from the effective date of the agreement.  Aside from that provision, the agreement was to

---

[1] We take our facts from those properly pleaded in the complaint and matters properly judicially noticed.  (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638.)

2

"continue in effect for so long as [Cookies, Milam] or any of their respective successors or assigns continue to hold shares of stock in [California Finest]."

In exchange, California Finest agreed to transfer Cookies 150 shares of its stock to defendants, which it then did.  The complaint alleged that those 150 shares "were later sold, assigned, transferred and delivered to Scott McPhail as successor in interest to [Milam]," which sale was the "subject of an additional related written agreement."[2]

The complaint alleged four causes of action:  (1) breach of contract, (2) common count of money had and received, (3) fraud, and (4) declaratory relief.

The first cause of action, breach of contract, alleged that defendants "sent a notice of termination of the Agreement on or about January 5, 2018 without basis under the Agreement," and that they "have sold and/or licensed pre-roll marijuana cigarette products in [San Benito County] on and after January 5, 2018."

The second cause of action, common count of money had and received, alleged that defendants had become indebted to California Finest "for money had and received . . . for the use and benefit of [California Finest] in the form of restitution of profits received upon the licensed property."

The third cause of action, fraud, alleged that defendants promised California Finest, both orally and in the agreement, to perform the tasks described above, but that at the time they made the promises, they "had no intention of performing."  It further alleged the promises were made with the intent to induce California Finest to transfer an ownership interest which was then transferred and that, after receipt of that interest, defendants "only minimally attempted performance and instead breached the Agreement

_____

[2] The complaint alleges that McPhail is the "manager" of California Finest. McPhail signed the agreement on behalf of California Finest as "president."  The judicially noticed Share Purchase Agreement, discussed further below, identifies McPhail as a founding shareholder of California Finest.

3

with a termination notice, and thereby refused to allow [California Finest] to exercise the [license] granted and granted similar licenses to others."

The fourth cause of action sought declaratory relief based on an actual controversy between the parties regarding the rights and duties under the agreement and whether it has been terminated or is enforceable.

### B. Demurrer

Defendants demurred to all four causes of action and asked the trial court to take judicial notice of the agreement and the 2017 "Share Purchase Agreement" through which defendants sold their shares of California Finest to McPhail.

As to the breach of contract cause of action, defendants argued that the agreement, by its plain language, terminated when defendants sold the shares to McPhail, who was not a "successor or assign" as defined in the agreement. Considering McPhail to be a "successor or assign," defendants argued, would also create the absurd result that any subsequent purchaser of the stock would be a successor or assign so that the agreement would survive as long as the shares existed. They further argued the complaint was uncertain and ambiguous because it did not allege sufficient facts explaining how defendants breached the agreement, but instead simply asserted that the notice of termination was "without basis."[3]

As to the second cause of action for "common count of money had and received," defendants argued it was simply an alternative way of seeking the same recovery as the first cause of action and therefore failed to state a claim for the same reasons.

As to the third cause of action for fraud, defendants argued the allegations were insufficiently specific and entirely lacked factual allegations to support the claim that

---

[3] The demurrer also addressed the remedies sought in the complaint; we need not address the parties' arguments regarding the remedies, though, because we determine the demurrer was properly sustained as to the underlying causes of action.

defendants did not intend to perform the obligations at the time the promises were made. Similarly, defendants argued that the allegation that Milam only "minimally attempted performance" lacked particularity or any factual support.

Lastly, as to the fourth cause of action for declaratory relief, defendants argued that it failed to state a claim for the same reason as the first cause of action—the agreement had been terminated when defendants sold their shares to McPhail.

In opposition to the demurrer, California Finest argued that the allegations in the first cause of action were sufficiently specific to allege breach of contract and the allegation that McPhail was a successor or assign was sufficient to allege that the agreement remained active. California Finest also objected to the request for judicial notice and argued that, even if the agreement were before the court, its terms did not establish that the stock sale terminated it.

With respect to the second cause of action for "common count of money had and received," California Finest argued that it was not the same as the first cause of action because it sought a different remedy—the recovery of a secret profit.

With respect to the third cause of action for fraud, California Finest argued the complaint sufficiently alleged that defendants "promised to provide a license and did not do so as promised." It further contended that defendants "promised to bring celebrities, media breeders and act as a brand ambassador, etc., and did not."

Lastly, California Finest argued that demurrer was inappropriate for the declaratory relief cause of action because whether defendants had properly terminated the agreement was "the dispute to be adjudicated," and even if the agreement were properly before the court, its terms do not establish that the stock sale terminated it.

### C. Trial court's order

The trial court sustained the demurrer as to all causes of action without leave to amend. It ruled that "Plaintiff fails to state a claim for breach of contract because it does not specifically or adequately allege any theory of breach by Defendants. Section 6.1 of

5

the licensing agreement between Plaintiff and Defendants . . . governed its duration, which would last only so long as Milam or his 'successors or assigns' continued to own stock in Plaintiff.  When Milam sold all of his shares of stock back to the Plaintiffs principal, the Agreement expired by the plain terms of Section 6.1. . . .  Plaintiff pleads no facts to support the allegation that the stock purchaser, Scott McPhail, became Mr. Milam's 'successor or assign' to the Agreement simply by purchasing the stock. . . .  Plaintiff therefore fails to allege any theory of contract breach that is not foreclosed by the plain language of the Agreement."[4]

With respect to the second cause of action, the court ruled that "[b]ecause Plaintiff fails to state a claim for breach of contract and its claim for money had and received is wholly derivative of that claim, Plaintiff's second cause of action also fails."

With respect to the third cause of action, the court held that "Plaintiff's claim for promissory fraud fails because Plaintiff does not plead each element with the requisite particularity.  Even if the statements Plaintiff refers to as promises could be interpreted as such, Plaintiff alleges no facts from which the Court can infer that Defendant did not intend to perform those promises *at the time they were made*."  In addition, "Plaintiff's bare allegation that Defendant 'only minimally attempted to perform' does not support an inference that Defendant never intended to perform."

The court ruled that the fourth cause of action did not state a claim for relief because "the language of the Agreement is plain and undisputed, and clearly states that the Agreement would terminate when Defendant sold his shares in Plaintiff's company," so that there is no present controversy that "would render judicial declaration as to the rights and obligations of the Parties under the Agreement appropriate."

---

[4] The trial court did not expressly rule on the request for judicial notice, although it did base its ruling on sections of the agreement that had not been included or quoted in the complaint.

Lastly, the trial court sustained the demurrer without leave to amend. The court explained that "Plaintiff's pleaded theories of breach and fraud depend on the notion [that] Defendants improperly terminated the Agreement. Because the Court finds that the plain language in the Agreement upon which Plaintiff bases its claims expressly forecloses that theory, amendment of the Complaint would be futile."

Appellant timely filed the notice of appeal, purporting to appeal a judgment of dismissal after an order sustaining a demurrer.[5]

## II. DISCUSSION

### A. *Standard of review*

Courts apply two distinct standards when reviewing an order sustaining a demurrer without leave to amend. (*Heritage Oaks Partners v. First American Title Ins. Co.* (2007) 155 Cal.App.4th 339, 344 (*Heritage Oaks*).) "First, we review the complaint de novo to determine whether it alleges sufficient facts to state a cause of action." (*Ibid*.) In doing so, "we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346.) " 'As a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court.' " (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d

---

[5] Although there is no such judgment in the record, we treat the order as appealable. (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.) While the general rule of appealability is that " '[a]n order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a dismissal on such an order,' " a court may deem such an order to incorporate a judgment of dismissal where " 'all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' " (*Ibid*., quoting *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.) We elect to do so here.

7

232, 238-239 (*Aragon-Haas*), quoting *Miller v. Bakersfield-News Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901.)

Secondly, we "then apply an abuse of discretion standard to determine whether there is a reasonable possibility that the complaint could be cured by amendment." (*Heritage Oaks*, *supra*, 155 Cal.App.4th at p. 344.) "If the complaint could be cured by amendment, ' "the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." ' " (*Ibid.*, quoting *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662.)

### B. Request for judicial notice

On appeal, defendants ask this court to take judicial notice of the agreement and the Share Purchase Agreement. We earlier deferred that request for consideration with the merits of the appeal.

As noted above, the trial court did not expressly rule on defendants' request for judicial notice. However, the trial court's order relied on portions of the agreement that had not been included in the complaint. Accordingly, we construe that order as having granted defendants' request pursuant to Evidence Code section 452, subdivision (h). (*Lydig Construction, Inc. v. Martinez Steel Corp.* (2015) 234 Cal.App.4th 937, 945 [where record is silent with respect to what trial court considered, reviewing court presumes it considered all pertinent matters presented to it and ruled in favor prevailing party]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [all intendments and presumptions indulged to support lower court order on matters as to which record is silent].)

On appeal, California Finest objects, as it did in the trial court, to the request for judicial notice. We treat these arguments and objections as a challenge to the trial court's granting of defendants' request, which we review for an abuse of discretion. (*In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1271.)

8

California Finest contends that "the existence of a contract between private parties cannot be established by judicial notice," citing *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137. But *Gould* does not stand for such a sweeping proposition. There, the defendant sought to introduce a written employment contract to *contradict* allegations in the complaint that plaintiff was employed pursuant to an oral agreement only. (*Id.* at p. 1144.) It was only in that context that the court held "the existence of a contract between private parties cannot be established by judicial notice under Evidence Code section 452, subdivision (h)," because that section permits a court to take notice of facts that are not reasonably subject to dispute. (*Id.* at p. 1145.) The court also expressly limited its holding, stating that it did "not rule out the possibility the existence of a contract could be established by judicial notice under different circumstances, e.g., through reference to the plaintiff's pleadings . . . ." (*Id.* at p. 1145, fn. 1, citing Evid. Code, § 452, subd. (d), and *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.)

Here, defendants requested judicial notice of the documents not to contradict the allegations in the complaint, but precisely because the complaint references them. In such circumstances, judicial notice is warranted under Evidence Code section 452, subdivision (h). (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1285, fn. 3 [documents quoted in but not attached to complaint properly judicially noticed]; *Salvaty v. Falcon Cable Television* (1985) 165 Cal.App.3d 798, 800, fn. 1 [agreement referred to throughout complaint and alleged to exist properly judicially noticed].)

California Finest objects to the request only on grounds of "propriety," but does not explain what that means in this context and has not cited any authority for such an objection. Nor does California Finest contend that the agreement defendants submitted is not in fact the operative contract between the parties and the same one referenced throughout its complaint.

9

The existence of the agreement is not subject to dispute here; the trial court did not abuse its discretion in granting the request for judicial notice.[6]

## C. *The trial court properly sustained the demurrer*

The chief issue on appeal is whether defendants' sale of shares of California Finest to McPhail in 2017 terminated the agreement. California Finest contends the sale did not terminate the agreement because McPhail became Milam's "successor or assign" through the transaction. Defendants disagree. As we explain below, California Finest's interpretation of the agreement is not reasonable. McPhail is not Milam's "successor or assign" and the agreement terminated upon the sale of the shares.

### a. *General principles of contract interpretation at the demurrer stage*

"When reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is 'reasonably susceptible' to the meaning ascribed to it in the complaint. [Citation.] ' "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." ' " (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1384-1385, quoting *Aragon–Haas, supra*, 231 Cal.App.3d at p. 239; citing *Connell v. Zaid* (1969) 268 Cal.App.2d 788, 795 [" 'in considering a pleading attacked by general demurrer,' plaintiff's ' "construction of . . . [the contract] should be accepted, if such construction be reasonable" ' "].)

"Whether a contract is ambiguous is a question of law." (*Aragon-Haas, supra*, 231 Cal.App.3d at p. 239, citing *Hillman v. Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 866.)

---

[6] As discussed further below, taking judicial notice of a document "is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.)

10

Applying these standards here, California Finest need only set forth a reasonable interpretation of the agreement to survive demurrer. It has failed to do so.

### b. *First cause of action—breach of contract*

The elements of a cause of action for breach of contract are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty*, *LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (*Oasis West Realty*).)

The complaint alleged that defendants sent a notice of termination of the agreement on January 5, 2018 "without basis under the Agreement," and that defendants "have sold and/or licensed pre-roll marijuana cigarette products in the specified Territory on or after" that date. Although it is not entirely clear from the complaint, California Finest appears to be alleging that defendants breached by purporting to terminate the agreement without justification and by subsequently licensing products in violation of the exclusive license provided pursuant to the agreement.[7]

Other allegations in the complaint, however, together with the plain language of the agreement, establish that the agreement was terminated in 2017 when defendants sold their shares of California Finest to McPhail; accordingly, neither the notice of termination nor any subsequent acts by defendants could constitute a breach.

The complaint alleges that Milam sold his shares to McPhail pursuant to an "additional related written agreement." Although the complaint does not allege when those shares were sold, the judicially noticed documents include the Share Purchase Agreement between defendants and McPhail dated November 30, 2017. California

---

[7] As noted above, defendants also demurred to the first cause of action on grounds of uncertainty, arguing the allegations did not include any facts explaining how defendants breached the agreement. We need not address that argument because our conclusion that the first cause of action fails to state a claim and cannot be cured by amendment is dispositive.

11

Finest does not argue that defendants did not sell their shares to McPhail via the Share Purchase Agreement; instead, it simply argues that the sale did not terminate the agreement.

However, the plain language of the agreement demonstrates the contrary. Section 6.1 provides in part: "Term. This Agreement and the terms hereof, except as otherwise provided herein, shall continue in effect for so long as [Cookies], [Milam] or any of their respective successors or assigns continue to hold shares of stock in [California Finest]." Accordingly, once defendants sold their shares to McPhail in 2017, neither defendants nor any of their successors or assigns continued to hold shares of stock in California Finest and the agreement no longer continued in effect.

California Finest concedes that section 6.1 governs the term of the agreement and provides that it will terminate when the shares are no longer held by defendants or their successors or assigns: "The license was expected to be perpetual, limited only by [Cookies], [Milam] or any of their respective successors or assigns not continuing to hold shares of stock in [California Finest]." California Finest merely contends that the trigger for termination has not occurred because McPhail *is* a "successor or assign" and continues to hold shares of stock in the company.

We disagree. Section 8.1 of the agreement defines "successors and assigns": "Successors and Assigns. This Agreement is assignable by [California Finest] to any successor of [California Finest] which acquires all or substantially all of the stock, assets or businesses of [California Finest], whether by sale, merger, recapitalization or other business combination, without [Cookies'] consent, provided that any such successor or assignee enters into a written agreement with [Cookies], agreeing to be bound by the specific terms of this Agreement. [Cookies] may assign or delegate any and all rights or obligations hereunder to any other entity that is owned or controlled [by Milam], either directly or indirectly."

12

The first sentence in the section identifies how and to whom California Finest may assign the agreement; the second sentence identifies to whom Cookies may assign its rights or obligations under the agreement, and limits it to an entity owned or controlled by Milam. McPhail is plainly not an entity owned or controlled by Milam—nor does California Finest allege or argue that he is—therefore, McPhail is not defendants' successor or assign under the agreement.

California Finest's arguments on this point are difficult to discern. It appears to argue that McPhail is a "successor" pursuant to Civil Code section 1000. But that section merely provides that "property interests like estates and easements" can be acquired by various means, including "succession"—that is, acquisition of property through intestacy. (*Hansen v. Sandridge Partners*, *LP* (2018) 22 Cal.App.5th 1020, 1032; Civ. Code, § 1000; *Estate of Schreck* (1975) 47 Cal.App.3d 693, 697.) The section has no application here.

Elsewhere, California Finest simply misconstrues defendants' arguments. It contends defendants mischaracterize section 8.1 by claiming that it limits to whom stock can be transferred. But defendants do not make that claim; instead, they argue that section 8.1 limits to whom defendants' rights and obligations under the agreement may be assigned. California Finest similarly asserts that "[d]efendants suggested without any authority that Plaintiff is required to explain how Mr. McPhail became a successor in interest," but that "all that is required in a complaint is the pleading of ultimate facts." California Finest again misconstrues the argument—defendants argued only that, under the plain language of the agreement, McPhail is not a successor so the agreement terminated upon defendants' sale of the stock.

California Finest also argues that, if granted leave to amend, it would allege facts showing that McPhail "paid for the interest." Again, though, there is no dispute that McPhail paid for the shares—indeed, that is what the complaint alleges and what

13

defendants contend triggered the termination of the agreement pursuant to section 6.1. The conclusion remains the same.  McPhail is not defendants' successor.

California Finest notes that, "if a contract set out in the complaint (or attached as an exhibit) is ambiguous, plaintiff's interpretation must be accepted as correct in testing the sufficiency of the complaint," citing *Aragon-Haas*, for the general maxim that a demurrer "admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible." (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.)  While that general proposition is true, the problem for California Finest is that we do not consider the agreement to be ambiguous on this issue. (*Ibid.* [whether contract is ambiguous is question of law].)  Instead, the agreement plainly provides that it continues only as long as defendants or their successors or assigns continue to hold shares in California Finest.  It also provides that McPhail is not defendants' successor or assign because he is not an entity owned or controlled by Milam.

Moreover, even where a contract is ambiguous, " 'it is proper, if not essential, for a plaintiff to allege its own construction of the agreement.' " (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.)  California Finest has not alleged or offered any other meaning or interpretation to which the agreement is reasonably susceptible.  In fact, it has not offered any other interpretation at all, either in the pleading or its arguments.  It simply insists that McPhail is a "successor" under the agreement, but does not explain how that could be the case given the language in section 8.1.

California Finest does argue, and the complaint similarly alleged, that the license issued pursuant to the agreement was to be, among other things, "perpetual."[8]

---

[8] Section 2.1 of the agreement, which neither party has directly referenced, provides:  "Grant of License.  Licensor hereby grants to the Company a non-exclusive, worldwide, perpetual, non-transferable, and irrevocable license to use the Licensed Property for the Permitted Uses in the Territory, and an exclusive, worldwide, perpetual, non-transferable, and irrevocable license to use the Licensed Property in connection with pre-roll marijuana cigarette products in the Territory."

14

And section 6.1—governing the term of the agreement—is qualified by the language, "except as otherwise provided herein." To the extent these provisions could be interpreted to mean that defendants' sale of stock terminated *other* obligations under the agreement that were not perpetual, we need not consider that because neither the complaint nor California Finest has advanced such an interpretation. (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) In fact, as noted above, California Finest advances a *contrary* interpretation by conceding that the perpetuity of the license is in fact limited by defendants or their successors or assigns holding shares of the company.[9]

In sum, the allegations in the complaint, together with the plain language of the judicially noticed documents, establish that the agreement terminated when defendants sold their shares to McPhail in 2017. For that reason, the first cause of action does not state a claim for breach because the actions that allegedly constituted the breach occurred after that date, when there was no operative contract, and the existence of a contract is an essential element of a claim for breach. (*Oasis West Realty*, *supra*, 51 Cal.4th at p. 821.)

### c. *Second cause of action—common count of money had and received*

The second cause of action is predicated on the alleged breach of contract set forth in the first cause of action. A "common count" is not a specific cause of action and when it "is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable." (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394.) Because we conclude that the first cause of action fails to state a claim for breach, the second cause of action necessarily fails as well.

---

[9] Defendants also argue that any interpretation of the agreement allowing McPhail to be considered a "successor or assign" through the sale of the shares would be absurd; California Finest contends to the contrary. We need not address that argument, though, because we conclude McPhail is not a successor or assign under the plain language of the agreement.

15

#### d. *Third cause of action—fraud*[10]

The third cause of action alleged that defendants "had no intention of performing" when they entered into the agreement, and then "only minimally attempted performance and instead breached the Agreement with a termination notice, and thereby refused to allow [California Finest] to exercise the [license] granted and granted similar licenses to others."

The elements of a cause of action for fraud are "misrepresentation, knowledge of falsity, intent to induce reliance on the misrepresentation, justifiable reliance on the misrepresentation, and resulting damages." (*Reeder v. Specialized Loan Servicing, LLC* (2020) 52 Cal.App.5th 795, 803 (*Reeder*), citing *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).) "Promissory fraud is a subspecies of fraud, and an action may lie where a defendant fraudulently induces the plaintiff to enter into a contract, by making promises he does not intend to keep. [Citation.] . . . 'In California, fraud must be pled specifically; general and conclusory allegations do not suffice.' " (*Reeder*, *supra*, at p. 803, quoting *Lazar*, *supra*, at p. 645.) A cause of action for promissory fraud must also properly allege nonperformance by the party making the promise. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498.)

The trial court sustained the demurrer to the third cause of action on the grounds that the complaint did not plead each element with sufficient particularity: " 'Each element [of a promissory fraud claim] must be alleged with particularity.' [(*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060.)] Plaintiff's claim for promissory fraud fails because Plaintiff does not plead each element with the requisite particularity." We agree with the trial court in this respect, particularly as to the allegations regarding intent not to perform and failure to perform.

---

[10] The complaint labeled this cause of action as "fraud"; California Finest concedes that it intended to plead "promissory fraud."

In *Reeder*, the plaintiff alleged promissory fraud based on a false promise that he would be able to refinance a loan after 10 years.  (*Reeder*, *supra*, 52 Cal.App.5th at p. 803.)  The complaint alleged only that when defendants made their promise, they " 'had no intention of allowing Plaintiff to re-amortize or re-finance' " (*ibid*.); that the defendants " 'made their false promises with the intent to induce Plaintiff to enter into the [loan]' " (*ibid*.); and that plaintiff " 'had a right to rely on Defendants' false promises, acted in reasonable reliance on those promises, and, in ignorance of their falsity, entered into the [loan].' " (*Id*. at pp. 803-804.)  The court held that those allegations were "the very sort of general and conclusory allegations that are insufficient to state a fraud claim" because "plaintiff has alleged no facts or circumstances suggesting defendants' intent not to perform the alleged promise when it was made." (*Id*. at p. 804.)

The same is true here where the complaint alleges no facts or circumstances at all regarding defendants' intent not to perform.  Instead, it makes only wholly conclusory allegations that "at the time [Defendants] . . . made the aforesaid promises to the Plaintiff, the Defendant(s) had no intention of performing it [*sic*]," and "only minimally attempted performance . . . ."

Beyond that, the complaint alleges only that Milam made a "representation in writing" to McPhail on or about June 30, 2015, in which he said:  " 'At the end of the day I'm a brand ambassador. . . .  That's my tittle . . . .  I get shit popin Scott.  You no that.  I bring to the table a platform to everything from mass social media reach, celebrities, breeders & and state licenses . . . .  It's gonna take a lot to make California's finest standout also a bigger and better than any other cigarette company out there, I feel like I can really help you guys get to that process.  Like I said at the end of the day I'm A brand ambassador. . . .  One of the best in the cannabis industry. . . .  I want you to really think about why I would on a piece of weed maps, be in full partnership with Raw papers, be an owner of rock nutrients, why do I get paid $45,000 a month from one cannabis club to act like I own it, why is cookies one of the biggest brands out right now, why is hemp2o

17

almost doing 1 million bottles a month after being in bizz for 4 months???? It's because your boy a big burn moves mean and has a crazy strong influence in this industry. . . ." (Sic.) Putting aside whether those representations constitute a "promise" in the first place, they do not speak to defendants' intent not to perform, which is a requisite element that is lacking here. As in *Reeder*, these allegations are general and conclusory and therefore insufficient to state a fraud claim. (*Reeder*, *supra*, 52 Cal.App.5th at p. 804.)

California Finest argues *Reeder* was incorrectly decided because it "misapplied the particularity requirement" and failed to apply a related exception. According to California Finest, the strict pleading standard for fraud contains an exception when "it appears the facts lie more within defendant's knowledge than plaintiff's: i.e., less specificity is required where 'defendant must necessarily possess full information concerning the facts of the controversy.' "

First, we disagree that *Reeder* was wrongly decided; there is no indication that the exception was at issue or warranted in that case. Second, any such exception is also inapplicable here, where it does not appear from the allegations in the complaint that the defendants must necessarily possess full information concerning the facts of the controversy; indeed, the complaint provides almost no details about it and California Finest has not explained why that would be the case. (*Tarmann v. State Farm Mutual Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 158 [exception inapplicable where defendant had no more reason to know facts of controversy].)

California Finest argues that because a defendant's own intent "is a matter known to the Defendant . . . the allegation that the representation was made with the intent to deceive the plaintiff, or any other similar general allegation is sufficient." But that is not the law; instead, " ' "[e]very element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically)." ' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216, superseded by statute on another

18

ground as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228.) California Finest's position would effectively eliminate the heightened specificity required for fraud claims; in every instance, a plaintiff could simply allege that the defendant had the requisite intent, and nothing more, because it must be a matter known to the defendant.

The complaint also lacks the requisite specificity regarding defendants' nonperformance, alleging that defendants "only minimally attempted performance," but without any facts or circumstances in support. On appeal, California Finest provides marginally more detail in its briefs: "Defendants promised to provide a license and did not do so as promised. Defendants promised to bring celebrities, media breeders and act as a brand ambassador, etc., and did not." However, those additional details still fall short of the particularity requirement. (*Reeder*, *supra*, 52 Cal.App.5th at p. 803.)

In sum, the allegations supporting the fraud cause of action lack the requisite specificity and the demurrer was properly sustained.

### e. Fourth cause of action—declaratory relief

The fourth cause of action seeks a "judicial determination of [California Finest's] rights and duties under the Agreement, and a declaration as to the enforceability of the Agreement."

Because we have determined that the allegations in the complaint, together with the plain language of the judicially noticed documents, establish that the agreement terminated when defendants sold their shares to McPhail in 2017, the fourth cause of action fails to state a claim and the demurrer was properly sustained.

### D. Leave to amend

The first, second and fourth causes of action all hinged on the breach of contract claim or a theory that defendants' sale of the shares did not terminate the agreement. Because we have determined the agreement was terminated when defendants sold their shares to McPhail in 2017, there are no facts California Finest could allege to state a

claim for breach based on actions taken after that point. (*Heritage Oaks*, *supra*, 155 Cal.App.4th at p. 344; *Oasis West Realty*, *supra*, 51 Cal.4th at p. 821.)

To the extent the complaint could be amended to state a claim for breach based on actions taken *before* that point, California Finest has failed to carry its burden of showing " ' "in what manner the pleadings can be amended and how such amendments will change the legal effect of their pleadings." ' " (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 122.) California Finest offers no facts that it would allege in an amended pleading to state such a claim. Instead, it states that it "can allege facts that Scott McPhail paid for the interest." As set forth above, though, there is no dispute that McPhail purchased defendants' shares, but that does not make him defendants' successor.

California Finest cites *Rutherford Holdings*, *LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, for the proposition that a plaintiff who failed to allege his own reasonable interpretation should be given leave to amend the complaint to do so. But that case is distinct. There, although the complaint had not alleged any interpretation of the operative contract, the plaintiff was given leave to amend because the court determined the contract was "reasonably susceptible of the meaning [plaintiff] ascribe[d] to it" in briefing. (*Id*. at p. 229.) Here, by contrast, the agreement is not reasonably susceptible of the meaning California Finest ascribes to it—that McPhail is a successor or assign.

Lastly, California Finest's statements in its brief—that "Defendants promised to provide a license and did not do so as promised [and] promised to bring celebrities, media breeders and act as a brand ambassador, etc., and did not"—are insufficient to carry its burden of showing how it could amend the pleadings to state a claim for breach. First, California Finest does not contend that the statements refer to acts taken before the stock sale. Second, the allegations in the complaint show that California Finest's theory is that the actions that constituted the breach occurred after and apart from defendants' alleged minimal attempt to perform: "After receipt the interest in Plaintiff [*sic*], said Defendant(s) only minimally attempted performance and instead breached the Agreement

20

with a termination notice, and thereby refused to allow the Plaintiff to exercise the lice [*sic*] granted and granted similar licenses to others. [¶] But for the breach and notice of termination, Plaintiff would have continued to exercise the license."

In sum, the trial court did not abuse its discretion sustaining the demurrer without leave to amend as to the first, second and fourth causes of action.

Our analysis is slightly different with respect to the third cause of action for fraud, although the outcome is the same. Contrary to the breach of contract cause of action, the claim for fraud is not entirely predicated on actions taken by defendants after the agreement had been terminated. Instead, the complaint alleges that defendants promised to perform certain acts and then "only minimally attempted to perform." If California Finest's argument is that those actions constituted the requisite elements of fraud, and that they occurred before the sale of the shares, it would not matter that the sale subsequently terminated the agreement because the fraud had already occurred. Accordingly, even though the allegations supporting the fraud cause of action were insufficiently specific, as described above, in theory they could be amended to satisfy the heightened pleading requirement.

However, California Finest has not met its burden of showing how it would amend the complaint in that manner. It states only that "Plaintiff can allege that Defendant Milam said words to that effect [*sic*] that he intended to not fulfil the agreement because he had other opportunities, and that he offered and/or made agreements to license the covered items to others before a notice of termination was provided, and also details on Defendant's lack of efforts to perform."

That is insufficient. Rather than actually identifying the requisite "facts or circumstances" to adequately plead a fraud claim, California Finest only states that it can or will do so. (*Reeder*, *supra*, 52 Cal.App.5th at p. 804.) Rather than identifying facts " ' "that show how, when, where, to whom, and by what means the representations were tendered," ' " California Finest only claims that it can do so later. (*Lazar*, *supra*, 12

21

Cal.4th at p. 645.)  Accordingly, California Finest has not carried its burden to show how it can amend to cure the defects in the complaint.  (*Reeder*, *supra*, at p. 805.)

### III.     DISPOSITION

Treating the order sustaining the demurrer as judgment of dismissal, we affirm. Defendants are awarded their costs on appeal (Cal. Rules of Court, rule 8.278(a)(2)).

_____
Wilson, J.

WE CONCUR:




_____
Greenwood, P.J.




_____
Lie, J.




California Finest 420, Inc. v. Cookies SF LLC
H049073